# MEMO ENDORSED

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER
Room 400
NEW YORK, NEW YORK 10281-1022

RECEIVED
JUL 12 2012
CHAMBERS OF
P. KEVIN CASTEL
U.S.D.J.

KAREN WILLENKEN
(212) 336-0140
WillenkenK@sec.gov

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7-12-12_

July 11, 2012

**By Hand Delivery**

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    ***SEC v. Mattera, et al., 11 Civ. 8323 (PKC)***

Dear Judge Castel:

On behalf of Plaintiff Securities and Exchange Commission ("SEC"), I write to request that a pre-motion conference be scheduled to discuss the SEC's proposed Motion to Admit Additional Evidence and to Amend Its Proposed Findings of Fact and Conclusions of Law in connection with the SEC's application for a finding of contempt against Defendant John A. Mattera and Relief Defendant Ann A. Mattera (the "Mattera Defendants") for violations of the asset freeze imposed in this case. The Mattera Defendants are currently scheduled to submit on July 17, 2012, their response to the SEC's Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"), which were submitted on June 18, 2012.

Since the SEC filed its Proposed Findings, it has learned of additional evidence suggesting that:

- Mr. Mattera asked his then-assistant, Lisa Yigit, to sign a promissory note in late November or early December, 2011. Although the promissory note suggested that Ms. Yigit had loaned $9,000 to Mr. Mattera, and Mr. Mattera testified in his deposition that she had done so in order to explain in part the sources of his cash (JM Tr. at 26:19-27:11[1]), Ms. Yigit did not actually provide him with any money.

---

[1]    "JM Tr." refers to the transcript of the deposition of John A. Mattera conducted on May 30, 2012, and "AM Tr. refers to the transcript of the deposition of Ann A. Mattera conducted the same day. Copies of these transcripts were submitted to the Court on June 4, 2012 as Exhibits 3 and 4, respectively, to the Second Supplemental Declaration of Karen Willenken in support of the contempt application, and were admitted into evidence at the hearing on June 5, 2012.

Hon. P. Kevin Castel
United States District Judge
July 11, 2012
Page 2

- Mr. Mattera, using Ms. Yigit as an intermediary, transferred physical share certificates of Fisker Automotive Inc. to Shailesh Gupta, one of the two brothers who signed the promissory notes that Mr. Mattera submitted to explain where he had gotten the money he had been spending (Response of John Mattera dated May 29, 2012 ("Response") at 2; JM Tr. at 26:19-27:11, 87:10-16, 109:14-25). This fact is inconsistent with Mr. Mattera's deposition testimony that he provided no security to Mr. Gupta in exchange for the promissory notes and that he had not transferred any assets to him. (JM Tr. 119:21-120:3). Mr. Mattera had previously asserted his Fifth Amendment rights in response to questions about the assets of Wilshire Capital Partners Group, which, according to a declaration filed by the General Counsel of Fisker Automotive, Inc., is the record owner of Fisker shares purchased by Mattera. (JM Tr. at 36:24-38:4; Declaration of Matthew K. Paroly dated November 17, 2011 (ECF No. 11) at ¶ 5).

- Mr. Mattera asked Ms. Yigit to sell jewelry for him, including an emerald necklace and ring. When she refused, he said that his mother would do it. A necklace with an emerald pendant and an emerald ring, along with other jewelry, were sold to Barclay's Jewelers for $28,500 by Ann Mattera. The description of the pendant and ring match the descriptions for two of the items described in the documents from Fine European Jewelry that Mr. Mattera submitted to the Court in this proceeding. This new evidence reflects an additional sale of frozen assets and is inconsistent with Mr. Mattera's testimony that he did not sell any of the jewelry he had purchased from Fine European Jewelry. (JM Tr. 96:14-18).

- Mr. Mattera arranged for his mother to lease the 2012 Audi automobile and provided the cash down payment that she was required to pay when she picked up the car. These facts are inconsistent with Mr. Mattera's written representation in the contempt proceeding that his mother obtained the car without his knowledge and that he later assumed the lease obligation. (Response at 2).

- Mr. Mattera asked Ms. Yigit and his housekeeper to witness the lease agreement pursuant to which his mother leased the $4,100 per month three-bedroom condominium apartment on Palmetto Road in Boca Raton. This fact is inconsistent with Mr. Mattera's written and oral representations that his mother leased the apartment "in a panic," that he did not know his mother had leased the condominium until after she did so, and that he played no role in having his employees witness the lease. (Response at 1-2; JM Tr. at 69:17-25; JM Tr. at 72:16-74:20).

- Mr. Mattera opened a bank account at Florida Shores Bank in the name of Cobra Elite Collectibles – an entity that was solely in his wife's name until April 27, 2012. Although he disclosed other accounts at the same bank in his Response, he did not disclose the Cobra Elite Collectibles account. He also did not disclose the account in his deposition testimony, when the SEC asked whether there were any bank accounts of which he was aware that were not reflected in the document. (JM Tr. 149:12-150:19). The bank account records reflect that a check for $10,000 from Palm Beach Motor Cars of West

Hon. P. Kevin Castel
United States District Judge
July 11, 2012
Page 3

Palm Beach, FL was deposited into the account on April 30, 2012. Records of Palm Beach Motor Cars indicate that the $10,000 check was the return of a deposit that Mr. Mattera had made, before the entry of the consent order in this case, to secure an allocation of two cars from the first batch of Fisker Karma automobiles sold in the United States.

- Mr. Mattera also opened three bank accounts at Fifth Third Bank in his own name on January 17, 2012, and he opened three additional accounts in the name of Boss Global Media at the same bank in April 2012. Although he disclosed accounts at other banks in his May 29, 2012 letter response to the SEC's application, he did not disclose any accounts at this bank. He also did not disclose any of the accounts in his deposition testimony, when the SEC asked whether there were any bank accounts of which he was aware that were not reflected in the document. (JM Tr. 149:12-150:19). The bank account records reflect that Mr. Mattera made deposits of over $60,000 into one of the personal accounts, used it to pay business expenses, and made substantial cash withdrawals from it. The existence of this account is inconsistent with Mr. Mattera's testimony that he "had to" run all of his business expenses through his mother's accounts because he was unable to open his own. It also demonstrates that Mr. Mattera has not been honest with the SEC or the Court in this proceeding.

- Ann Mattera misrepresented her income in order to lease both the BMW 650i convertible and the Volkswagen Jetta that were discussed at her deposition. In her deposition, Ann Mattera had testified that she permitted a salesperson to misrepresent her monthly income as $18,000 when it was actually lower. (AM Tr. at 32:18-35:19). Mr. Mattera testified that her actual income was limited to approximately $1,000 per month "on a disability from the government." (JM Tr. at 68:20-22). The new evidence reflects that she also permitted other automobile sales representatives to represent her monthly income as $20,000 and her annual income as $250,000. These facts corroborate the existing evidence that Mrs. Mattera is not a credible witness.

- In contrast with the deposition testimony of both the Mattera Defendants that the BMW convertible was "returned" within a month after Mrs. Mattera obtained it(AM Tr. at 56:12-14; JM Tr. at 68:20-22, 135:19-136:3, 137:16-22), the vehicle actually was in their possession for more than three months before a notice of repossession was issued by the lessor. This fact corroborates the existing evidence that neither of the Mattera Defendants is a credible witness.

With the Court's permission after the pre-motion conference, the SEC will move to admit into evidence the enclosed Declaration of Lisa Yigit, and the enclosed Third Supplemental Declaration of Karen Willenken with exhibits. To facilitate the expeditious consideration of the additional evidence by the Court and the Mattera Defendants, copies of all the materials that the SEC proposes to admit have been included with this letter.

Hon. P. Kevin Castel
United States District Judge
July 11, 2012
Page 4

The SEC proposes, for the consideration of the Court and discussion during the conference, the following revised schedule. The Mattera Defendants would have until July 18, 2012 to object to the SEC's evidence and/or submit their own additional evidence, if any. The SEC would have until July 24, 2012 to object to the Mattera Defendants' new evidence, to respond to any objections by the Mattera Defendants to the SEC's evidence, and to submit its Amended Proposed Findings of Fact and Conclusions of Law. The Mattera Defendants would have until July 30, 2012 to submit their response to the Amended Proposed Findings of Fact and Conclusions of Law.

Respectfully,

Karen E. Willenken
Senior Counsel
Division of Enforcement

Encls.
cc:      All *pro se* defendants and counsel of record (via email, without enclosures) and John and Ann Mattera (by UPS, with enclosures)