UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,                          11 Civ. 8323 (PKC)

                    -against-

                                                                        FINDINGS OF FACT AND
                                                                        CONCLUSIONS OF LAW
                                                                        ON CIVIL CONTEMPT

JOHN A. MATTERA, et al.,

                                    Defendants,
                    -and-

ANN A. MATTERA, et al.,

                                    Relief Defendants.
----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Securities and Exchange Commission (the "SEC") moves for an order

finding defendant John A. Mattera ("John Mattera" or "Mattera") and relief defendant Ann A.

Mattera ("Ann Mattera") (referred to collectively as the "Mattera Defendants") in civil contempt.

Specifically, the SEC asserts that John Mattera and Ann Mattera, who is John Mattera's mother,

have disobeyed this Court's orders dated November 17, 2011, November 29, 2011, and

December 1, 2011 (referred to collectively as the "Court's Orders").

        Set forth below are the Court's Findings of Fact and Conclusions of Law.  Having

considered the parties' submissions and the evidence admitted into the record, the Court finds by

clear and convincing evidence that the Mattera Defendants violated the Court's Orders.  The

Mattera Defendants are therefore adjudged to be in contempt of Court, and the SEC's motion is

granted.

FINDINGS OF FACT

I.     Procedural History

On November 17, 2011, the SEC filed its Complaint.  (Docket # 1 ("Compl.").)  In its Complaint, the SEC alleged that Mattera and the other named defendants had engaged in the fraudulent and sales of securities.  (Id.)  Specifically, the Complaint alleged that the defendants solicited more than $12.6 million in investments in special purpose investment vehicles ("SPVs").  In these SPVs, the defendants purported to hold shares in certain privately-held companies expected to launch initial public offerings ("IPOs").  (Id. ¶¶ 1–4.)  The Complaint further alleged, however, that the SPVs did not in fact hold such shares and defendants simply transferred investor funds to accounts under their control.  (Id. ¶ 5.)

a.     The Orders

On November 17, 2011 the SEC applied ex parte to the Court for a Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief ("Temporary Restraining Order" or "TRO").  (Docket # 4; Sept. 17, 2012 Evid. Hr'g ("Sept. 17 Hr'g") Ex. 20.)  The Court granted the SEC's application for the TRO that same day.  (Id.)

The TRO contained provisions ordering expedited discovery.  (Id. § XVIII.)  The TRO permitted the parties to "[o]btain the production of documents, within three (3) calendar days from service by facsimile, email or otherwise of a request or subpoena, from any persons or entities, including non-party witnesses . . . ."  (Id. § XVIII(2).)  The TRO stated that its expedited discovery provisions "will remain in place beyond any hearing on the [SEC]'s application for preliminary injunction."  (Willenken Decl. Ex. A at A7.)  The TRO was mailed to Mattera and Ann Mattera, and Ann Mattera personally received and signed for delivery.  (Willenken Decl. Ex. B.)

2

On November 29, 2011, the Court held a hearing on the SEC's application for a preliminary injunction. At the hearing, the SEC presented the Court with a Stipulation and Consent Order Imposing Preliminary Injunction and Other Relief Against Defendant John A. Mattera (the "Consent Order") signed by John Mattera. (Docket # 25; Sept. 17 Hr'g Ex. 21.) The Consent Order was entered as an Order of the Court and filed that same day. (Id.) Ann Mattera did not appear at the hearing or file an opposition.

The Consent Order imposed a number of conditions on Mattera. It ordered him to hold and retain within his control, and otherwise prevent "any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds, or other property," including money and personal property, whether held in Mattera's name or for his direct or indirect beneficial interest. (Willenken Decl. Ex. A at A13–A17.)

The Consent Order enumerated specific exceptions to the prohibition described above. First, it excepted the assets pledged as collateral by Mattera's then wife, Lin Phan, for Mattera's bail application. (Id. § VI(1).) Second (and germane to this motion), the Consent Order permitted Mattera to spend money or income that Mattera earned after the date of the Consent Order under certain conditions. More specifically, it permitted Mattera to spend money provided that "Mattera or one or more of the Mattera Entities receives the money . . . from sources other than any of the defendants or relief defendants in this case or any person or entity affiliated with any of the other defendants or relief defendants in this case; and (b) Mattera or one or more of the Mattera Entities earns or otherwise obtain the money from activities that do not in any way involve the offer, purchase or sale of any security." (Id. § VI(2).) The Consent Order defined income meeting these criteria as "Post-Tax Income." (Id. § VI(3).) Mattera was then permitted to "use 75% of the Post-Tax Income for his own purposes," provided he pay 25% of such income into a Court Registry

3

Investment System ("CRIS") account within three days of the end of the month in which it was earned.  (Id.)

The Consent Order permitted Mattera to incur debt under specifically enumerated circumstances.  Mattera could use credit cards or otherwise incur debt "only" for: "reasonable expenses to travel to New York City for required court appearances in this case and the criminal case against him;" and "insofar as each month's total, aggregate credit card charges do not exceed the 75% of Post-Tax Income described above for that month provided that the credit card charges are paid for in full using the 75% of Post-Tax Income described above and that Mattera provides a copy of each credit card statement to [the SEC] within three business days of receiving it."  (Id. § VI(4).)

The Consent Order also imposed several disclosure obligations on Mattera.  It required Mattera to provide to the SEC "the amounts, dates, and descriptions of the moneys earned by him, released to him, charged and credited to his credit cards, and paid into the CRIS Account."  (Id. § VI(5).)  Mattera was directed to provide this information to the SEC in a "sworn accounting" on the "fifth calendar day of each month."  (Id.)

Thus, the Consent Order prohibited John Mattera from incurring debt in an amount greater than 75% of his Post-Tax Income as defined in Section VI, unless incurred for the purpose of traveling to New York for required court appearances.  To the extent that John Mattera earned Post-Tax Income or incurred debt, the Consent Order required him to provide documentation to the SEC on the fifth calendar day of each month.

On December 1, 2011, the Court granted the SEC's application for an Order Granting Preliminary Injunction, Freezing Assets, and Granting Other Relief against the "non-opposing" defendants, including Ann Mattera (the "PI Order").  (Docket # 28; Willenken Decl. Ex. A at A25–A34.)  The PI Order directed Ann Mattera to hold and retain within her control, and otherwise

prevent "any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal" of assets, including money and personal property, whether "held in her name or for her direct or indirect beneficial interest," up to "the amount of potential ill-gotten gains that Ann Mattera received from" the defendants.  (Id. § VI.)  The PI Order also prohibited Ann Mattera from incurring debt, including credit card debt, "in excess of $1,000."  (Id.)  Unlike the Consent Order entered into between the SEC and John Mattera, the PI Order contained no provisions excluding from the asset freeze any money or income earned by Ann Mattera after entry of the PI Order.  (Id.)

The PI Order also contained disclosure requirements for the "Non-Opposing Defendants and, "in the case of Ann Mattera, . . . Ann Mattera."  (Id. § VIII.)  Along with the non-opposing defendants, Ann Mattera was ordered to provide to the SEC a "list of all accounts at all banks, brokerage firms or financial institutions" maintained by Ann Mattera at any time from January 1, 2010, and a list of "money, property, assets, and other income received by [Ann Mattera], in or at any time from January 1, 2010 to the date of the accounting, describing the source, amount, disposition, and current location of each of the items listed."  (Id. § VIII(1)–(3).)

In its Complaint, the SEC alleged that Ann Mattera had received more than $2 million in investor funds as part of to the defendants' fraudulent scheme.  (Compl. ¶¶ 89, 123–25.)  Along with its Complaint, the SEC submitted to the Court an affidavit "identif[ying] payments of at least $1.9 million to an account in the name of Ann Mattera."  (Needham Decl. ¶ 154.)  A statement for Ann Mattera's E*TRADE account, as of October 31, 2011, showed securities of a value of $2,759,747 and a margin obligation of $1,627,228, for a net account value of $1,132,517.  (Willenken Decl. Ex. G.)

Because Ann Mattera did not possess sufficient assets to pay a potential disgorgement judgment of an amount approximating $1.9 million following entry of the PI

Order, all of Ann Mattera's assets were covered by the asset freeze provisions of the PI Order as detailed in Section VI therein.  Thus, I find that the PI Order prohibited Ann Mattera from incurring more than $1,000 in debt, and required her to provide to the SEC a verified written accounting of the information described in Section VIII of the PI Order.

      b.    <u>The SEC's Motion to Hold the Mattera Defendants in Civil Contempt</u>

On May 22, 2012, the SEC filed an Order to Show Cause Why Defendant John A. Mattera and Relief Defendant Ann A. Mattera Should Not Be Held in Contempt of Court (the "Contempt Motion").  (Docket # 77.)  The SEC alleged in its Contempt Motion that the Mattera Defendants had violated the asset freeze and discovery provisions of the TRO, the Consent Order, and the PI Order as described above.  (<u>Id.</u> at 1–4.)

On May 29, 2012, John Mattera and Ann Mattera appeared before this Court on the SEC's contempt motion.  The Court set a hearing date on the contempt motion for June 5, 2012.  The SEC offered certain declarations and exhibits at the June 5 hearing, which were received into evidence without objection.  (June 5, 2012 Hr'g Tr. at 6–7.)[1]  After John Mattera swore in open Court to the truth of its contents, the Court admitted into evidence, over the objection of the SEC, a letter titled "Response of John Mattera" dated May 29, 2012.  (<u>Id.</u> at 7:23–8:22.)  Neither side having any other evidence to offer, the Court closed the evidentiary record and directed the SEC to submit its proposed findings of fact and conclusions of law by June 18, 2012, with any response by John Mattera due June 25, 2012.  (<u>Id.</u> at 11, 17:5–18:4.)

The SEC filed its Proposed Findings of Fact and Conclusions of Law on June 18, 2012.  (Docket # 90.)  On June 19, the Court issued an Order extending the Mattera Defendants' time to respond from June 25 to July 6, 2012 and directing the Mattera Defendants as to the form

---

[1] John Mattera appeared <u>pro se</u>.  Ann Mattera did not appear.  A fax was sent to Chambers on June 1, 2012, in which a Luis G. Tumminia, D.O., represented that Ann Mattera was unable to travel.  (<u>Id.</u> at 2:10–2:17.)

of any such response.  (Docket # 91.)  The Court's June 19, 2012 Order was served on all defendants and relief defendants on June 21, 2012.  (Docket # 92.)  On July 5, 2012, the Court issued an Order further extending the Mattera Defendants' time to respond to the SEC's submissions to July 17, 2012 and extending the SEC's time to reply to July 24, 2012.  (Docket # 93.)

On July 12, 2012, the SEC submitted an application to reopen the evidentiary hearing.  (Docket # 94.)  The Court set the hearing for August 2, 2012, and ordered all written submissions by either side to be received by July 27, 2012.  (Docket # 99.)  The Court held an evidentiary hearing on August 2, 2012, at which neither of the Mattera Defendants appeared. The Court continued the evidentiary hearing to September 17, 2012, and directed the SEC to submit its additional bases for contempt by September 7, 2012.  John Mattera submitted a written response to the SEC's contempt allegations on August 17, 2012.  The SEC served upon the Mattera Defendants both a subpoena to appear and testify at the hearing scheduled for September 17, 2012, and a written summary of the evidence and exhibits it intended to offer at the hearing. (Docket # 104, 105.)  The Court concluded the evidentiary hearing on September 17, 2012, at which neither of the Mattera Defendants appeared or offered evidence.

II.    Findings of Civil Contempt as to Defendant John Mattera

a.    John Mattera Violated the Consent Order by Selling a Lamborghini and Transferring the Proceeds to Ann Mattera

At a deposition, John Mattera admitted that following entry of the TRO, Consent Order, and PI Order, he sold a Lamborghini automobile in exchange for a $28,000 check from College Auto Sales of Florida, Inc., an automobile salvage company.  The check was payable to John Mattera and dated December 29, 2011.  (Willenken Second Supp. Decl. Ex. 28 at 3 & Ex. 3 ("Mattera Dep.") at 81.)  On January 18, 2012, Mattera presented the check to Wells Fargo Bank

and received a cashier's check in the amount of $28,000, which was payable to him and dated on or about January 18, 2012. (Willenken Second Supp. Decl. Ex. 28 at 2–3; Mattera Dep. at 78:2–78:16.) Mattera then endorsed the cashier's check to Ann Mattera. Mattera testified that he instructed Ann Mattera to "hold it" and "just put it away because it doesn't belong to us." (Id. at 81:12–81:25.) However, on January 19, 2012—the very next day—Ann Mattera deposited the cashier's check into an account held in her name at Iberia Bank. (Willenken Decl. Ex. L at L15.)

The Court does not find credible Mattera's testimony that he never intended for Ann Mattera to deposit the cashier's check. (Mattera Dep. at 78:5–82:18.) As described in greater detail below, Mattera testified to running all "family obligations" through Ann Mattera's bank and credit card accounts in order to pay Mattera's expenses. (Id. at 52:25–56:13, 85:8–85:18, 120:25–22:3.) The Court finds by clear and convincing evidence that Mattera endorsed the cashier's check to Ann Mattera for the purpose of having her deposit the funds and have those funds be available to him for future use.

Accordingly, the Court finds by clear and convincing evidence that John Mattera violated the Consent Order by selling a Lamborghini automobile for $28,000 and transferring the proceeds to Ann Mattera to deposit and, thereafter, spend on his behalf.

b.    John Mattera Violated the Consent Order by Incurring Debt in an Amount Greater than Seventy-Five Percent of His Post-Tax Income

On December 1, 2012, John Mattera issued a promissory note to Lisa Yigit in the amount of $9,000. (Willenken Second Supp. Decl. Ex. 34.) Mattera testified in his deposition that he issued the note to Yigit after she provided him with $9,000 with which to pay various expenses. (Mattera Dep. at 131:17–131:22.) Also following entry of the Consent Order, John Mattera issued promissory notes to Manish and Shailesh Gupta totaling $100,000. (Willenken Second Supp. Decl. Ex. 32.) The promissory notes called for repayment beginning one year

8

from the date of each note.  (Id. at 1–6; Mattera Dep. at 114:20–115:6.)  Mattera admitted to issuing the promissory notes described above from "the beginning of December" 2011, after imposition of the Consent Order.  (Mattera Dep. at 109:14–112:18.)

Regarding the purpose of the promissory notes, Mattera testified that he generally issued them shortly before or after instances in which the Gupta brothers provided Mattera with cash to pay various expenses.  (Id. at 110:22–113:4.)  Mattera referred to the promissory notes as the "notes that Manish and Shailesh Gupta have been kind enough to execute with me" and stated that the Gupta brothers "have been helping me keep things going."  (Id. at 109:22–109:25.)  Mattera admitted that the notes were issued in exchange for loans from the Guptas and that Mattera had "borrow[ed] the money personally" from the Guptas prior to issuing the notes.  (Id. at 114:20–115:6.)

Lastly, Mattera testified that sometime in May 2012, the Gupta brothers provided him with $5,000 to meet payroll expenses.  (Id. at 110:22–111:8.)

As noted above, the Consent Order permitted Mattera to incur debt, credit card otherwise, only up to 75% of the Post-Tax Income earned in that month.  (Willenken Decl. Ex. A at A13–A17 § VI(4).)  In correspondence with the SEC, however, Mattera represented that through May 5, 2012 he had received "no Post Tax Income that meets the criteria of Section(VI) of" the Consent Order.  (Willenken Decl. Ex. D at D1–D6.)  Mattera also stated in his May 30, 2012 deposition that he has yet to earn any Post-Tax Income as defined in the Consent Order following its effective date.  (Mattera Dep. at 18:21–19:6 ("I haven't earned any income.").)

I find by clear and convincing that John Mattera incurred at least $114,000 in debt by way of promissory notes issued to Lisa Yigit and Manish and Shailesh Gupta in violation of the Consent Order.

c.      John Mattera Violated the Consent Order by Transferring Funds to Ann
         <u>Mattera to Make Unauthorized Expenditures on Mattera's Behalf</u>

On December 27, 2011, Ann Mattera opened a bank account at Iberia Bank, and, on December 29, 2011, she opened a bank account at Regent Bank.  (Willenken Second Supp. Decl. Exs. 48, 49.)  Ann Mattera was the sole signatory on both accounts.  Account statements from Regent Bank reflect that between December 30, 2011 and April 2, 2012, approximately $68,107 was deposited into Ann Mattera's Regent Bank account.  (Willenken Decl. ¶ 33 & Ex. J at J4–J14.)  The account statements also reflect that between December 28, 2011 and March 29, 2012—again, following entry of the TRO, Consent Order, and PI Order—approximately $64,561.45 was drawn on Ann Mattera's Regent Bank account for various expenditures, including payments to American Express, Capital One, and personal checks to Maria Luisa Martini.  (<u>Id.</u>)

Regarding her account with Iberia Bank, account statements reflect that from December 27, 2011 through March 27, 2012, approximately $58,086.53 was deposited into Ann Mattera's Iberia Bank account.  (Willenken Decl. Ex. L.)  The statements also reflect expenditures of approximately $55,023.22 from January 4, 2012 through March 27, 2012.  (<u>Id.</u>)  Account statements from both the Regent Bank and Iberia Bank accounts reflect that Ann Mattera drew on the accounts to pay various expenses related to real property located at 455 East Palmetto Park Road, Boca Raton, Florida 33432 (the "Boca Raton Condo"), including rent, utilities, and parking fees.  (<u>Id.</u> Ex. I at I15–I19.)

John Mattera admitted in his deposition that the accounts Ann Mattera opened in her name were used to pay his personal and business-related expenses.  (Mattera Dep. at 120:25–121:10.)  Indeed, Mattera admitted that upon receiving money in cash, he would then provide it to Ann Mattera to "handle the family's finances" and "[m]a[k]e sure everything got paid."  (<u>Id.</u> at

121:24–122:3.)  Mattera testified that he learned of Ann Mattera's accounts with Iberia Bank and

Regent Bank in January 2012 (id. at 83:13–83:25), and that he was aware that Ann Mattera was

using those accounts to pay rent and utilities on the Boca Raton Condo.  (Id. at 85:8–85:18.)

Ann Mattera executed a lease for the Boca Raton Condo on December 15, 2011, which two of

Mattera's employees signed as witnesses at John Mattera's direction.  (Willenken Decl. Ex. I at

I4–I7; Yigit Decl.¶ 5.)  Documents also reflect that parking fees associated with the Boca Raton

Condo were paid out of Ann Mattera's accounts.  (Id. ¶ 31 & Ex. I at I15.)

   Mattera stated that in regard to paying rent and utilities expenditures on the Boca

Raton Condo and on his company's business office, he would "give [his] mother cash and then []

do the transfer" and "just make sure she deposited it into the account," referring to Ann

Mattera's account with Regent Bank.  (Mattera Dep. at 126:20–128:2.)  Mattera would simply

"tell her how much to pay and to whom" from Ann Mattera's accounts, and that Ann Mattera

had "been doing this for years."  (Id. at 128:12–128:25.)  Mattera admitted plainly that Ann

"would tell me what needed to get paid and I would give her the cash."  (Id. at 130:22–130:24.)

Mattera was also aware that Ann Mattera was using her accounts to make payments to American

Express, among other creditors, for expenditures on behalf of Mattera and of Mattera Asset

Management.  (Id. at 129:3–130:3.)

   Mattera did not contact the SEC subsequent to the Consent Order to request

assistance in opening an account from which to pay his expenditures.  (Id. at 121:6–122:3.)

   As noted above, the Consent Order dated November 29, 2011 permitted Mattera

to incur debt, credit card otherwise, only up to 75% of the Post-Tax Income earned in that month.

(Willenken Decl. Ex. A at A13–A17 & § VI(4).)  Also as noted, Mattera represented in

correspondence to the SEC that, through May 5, 2012, he had received "no Post Tax Income that

meets the criteria of Section(VI) of" the Consent Order.  (Willenken Decl. Ex. D at D1–D6.)

Mattera reiterated in his May 30, 2012 deposition that he has yet to earn any Post-Tax Income as

defined in the Consent Order after its effective date.  (Mattera Dep. at 18:21–19:6 ("I haven't

earned any income.").)

    I find by clear and convincing evidence that John Mattera provided cash to Ann

Mattera with which to pay various personal and business-related expenditures after the Consent

Order became effective.  The Court therefore finds that Mattera violated the asset freeze

provisions of the Consent Order as detailed in Section VI therein.

    d.  John Mattera Violated the Consent Order by Causing Ann Mattera to Sell
      Jewelry in Exchange for $28,500

    On or about February 27, 2012, Ann Mattera sold jewelry in the amount of

$28,500 to Barclay's Jewelers, Miami, Florida 33132.  (Sept. 17 Hr'g Ex. 7.)  At the September

17, 2012 evidentiary hearing, Lisa Yigit testified that John Mattera had previously instructed

Yigit to appraise the jewelry in advance of potentially selling it.  (Sept. 17 Hr'g.)  Yigit further

testified that she refused John Mattera's request, at which point he approached Ann Mattera to

appraise and sell the jewelry.  (Id.)  Indeed, Yigit testified in her July 24, 2012 deposition that

Ann Mattera sold the jewelry at John's request.  (Willenken Fourth Supp. Decl. Ex. V ("Yigit

Dep.") at 26:5–27:9.)  In a sworn declaration dated July 10, 2012 and filed with the Court, Yigit

testified that she "told [John] I would not sell the jewelry for him, and he said 'my mom will do

it.'"  (Yigit Decl. ¶ 7.)

    I find by clear and convincing evidence that John Mattera violated the Consent

Order by causing Ann Mattera to sell jewelry in exchange for $28,500.

e.      John Mattera Violated the Consent Order by Receiving and Depositing
$10,000 from Palm Beach Motor Cars

In or about December 2010 or January 2011, John Mattera paid a $10,000 deposit
to Palm Beach Motor Cars, 915 South Dixie Highway, West Palm Beach, Florida 33401.  (Sept.
17 Hr'g Ex. 6.)  On or about April 30, 2012—after imposition of the Consent Order—John
Mattera requested and received a return of the $10,000 deposit, which he then deposited into a
bank account in the name of Cobra Elite Collectibles, LLC ("Cobra Elite").  (Id. Ex. 1 at FSB-
1000–FSB-1001, FSB-1009.)  Documents filed with the Secretary of State of Florida state that
John Mattera and his wife, Lan T. Phan, were the registered agents for Cobra Elite at the time of
the $10,000 deposit.  (Id. at FSB-1003.)[2]

An account statement for the Cobra Elite account dated May 31, 2012 indicates
that from April 30, 2012, payments were drawn on the account.  (Id. at FSB-1010–1011.)  For
example, $5,000 was debited on May 7, and another $1,000 on May 10.  (Id. at FSB-1010–
1012.)  Bank transaction documents describe the two debits simply as "Cash Out."  (Id. at 1012.)
The Cobra Elite account was closed with a $0 balance on June 4, 2012.  (Id. at FSB-1013.)

Section VI of the Consent Order dated November 29, 2011 ordered John Mattera
to hold and retain within his control, and otherwise prevent "any withdrawal, transfer, pledge,
encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds, or
other property," including money and personal property, whether held in Mattera's name or for
his direct or indirect beneficial interest, unless such assets or funds constituted Post-Tax Income
as defined therein.  (Willenken Decl. Ex. A at A13–17.)  The Consent Order also prohibited John
Mattera from incurring debt in an amount greater than 75% of his Post-Tax Income as defined in

---

[2] Phan was listed as the sole registered agent in Cobra Elite's articles of incorporation, filed June 10, 2010.  (Id. at
FSB-1004–1005.)  John Mattera was then added as a registered agent in a document filed April 27, 2012.  (Id. at
FSB-1003.)

Section VI, unless incurred for the purpose of traveling to New York for required court appearances.  To the extent that John Mattera earned Post-Tax Income or incurred debt, the Consent Order required him to provide documentation to the SEC on the fifth calendar day of each month.

I find by clear and convincing evidence that John Mattera violated the Consent Order by depositing the $10,000 he retrieved from Palm Beach Motor Cars into an account he controlled in the name of Cobra Elite, and then withdrawing funds from that account.

III.   Findings of Civil Contempt as to Relief Defendant Ann Mattera

a.   Ann Mattera Had Actual and Constructive Notice of the Court's Orders

On or about November 17, 2011, counsel for the SEC contacted Ann Mattera by telephone notifying her that the SEC intended to name her as a relief defendant in its action against John Mattera.  (Willenken Decl. ¶ 8.)  As noted above, the Court then granted the SEC's application for a TRO on November 17, 2011, and the PI Order on December 1, 2011.  (Docket # 4; Docket # 28.)  On November 17, 2011, the SEC sent a copy of the TRO to Ann Mattera at 2925 Salerno Way, Delray Beach, Florida 33306.  (Willenken Decl. Ex. B at B1.)  Ann Mattera signed for delivery of the TRO on November 18, 2011.  (Id.)  On December 1, 2011 the SEC sent a copy of the PI Order to Ann Mattera at the Salerno Way address.  Ann Mattera signed for the delivery of the PI Order on December 2, 2011.  (Id. at B3–B4.)  Ann Mattera admitted in her deposition that during the period in which the TRO and PI Order were delivered, she lived alone at the Salerno Way address.  (Willenken Second Supp. Decl. Ex. 4 ("Ann Mattera Dep.") at 11:23–13:3.)

Despite the foregoing, Ann Mattera denied in her deposition of May 30, 2012 ever having received copies of the TRO or the PI Order.  (Ann Mattera Dep. at 21:20–21:22,

22:16–22:17, 24:10–24:12.)  In light of the documentary evidence described above and other evidence contained in the record, I find Ann Mattera's testimony on this point to be not credible. Moreover, Ann Mattera testified that she became aware of the TRO and of the PI Order freezing her assets in "[e]ither November or December" 2011 when she attempted to withdraw funds from bank accounts she held in her name.  (Id. at 22:24–24:9.)  Indeed, Ann Mattera testified that she learned of the asset freeze imposed by the PI Order after she "went to get some money out of th[e bank] wouldn't give me anything."  (Id. at 24:8–24:9.)

I find by clear and convincing evidence that Ann Mattera had actual knowledge of this Court's TRO and PI Order.

      b.      Ann Mattera Violated the PI Order by Leasing Two Residences and
              <u>Acquiring at Least Two Automobiles</u>

On or about December 2, 2011, Ann Mattera leased a 2012 Audi automobile.  (Id. at 28:21–30:12; Willenken Decl. Ex. M at M1–M3.)  In executing the lease, Ann Mattera made a cash payment of $5,000 by check to Audi of Coral Springs, Florida, the automobile dealership. (Id. at M2.)  In doing so, Ann Mattera became obligated to make monthly payments of $1,297.73, which she proceeded to pay using her recently-opened Regent Bank account.  (Id. Ex. M at M2 & Ex. J at J7, J10–J11.)

On January 25, 2012, Ann Mattera also purchased a second Audi, a 2009 Audi, from Audi of Coral Springs.  (Id. Ex. M at M5.)  In making the purchase, Ann Mattera traded in two automobiles, a 2004 Audi and a 2010 Toyota Corolla, and paid the dealership an additional $2,436.20 to cover the difference in value.  (Id. at M5–M7; Ann Mattera Dep. at 37:7–37:19.) The $2,436.20 Ann Mattera paid to Audi of Coral Springs was drawn on her Iberia Bank account.  (Willenken Decl. Ex. N.)

In addition to leasing the 2012 Audi and purchasing the 2009 Audi, Ann Mattera acquired a 2012 BMW 650i automobile sometime in 2012.  She admitted in her deposition to acquiring the 2012 BMW after learning of the asset freeze imposed by the Court's TRO and PI Order.  (Ann Mattera Dep. at 55:14–56:5.)  At some point thereafter, Ann Mattera traded the 2009 Audi she previously purchased from Audi of Coral Springs for a Toyota automobile.  (Id. at 38:13–39:5.)  Finally, Ann Mattera testified that she had "just got a Jetta" a couple of weeks prior to May 30, 2012—the date of her deposition—but that she was now "through buying cars." (Id. at 39:6–40:13.)

On December 15, 2011, Ann Mattera leased the Boca Raton Condo, previously identified as a three-bedroom condominium located at 455 East Palmetto Park Road, Boca Raton, Florida 33432.  (Willenken Second Supp. Decl. Ex. 26.)  Ann Mattera leased the Boca Raton Condo from Fifth Avenue Place, LLC, a Florida company.  (Willenken Decl. Ex. I at I4.) The lease required Ann Mattera to pay $14,085.25 upon execution and $4,190 per month thereafter.  (Id.)  Two employees of John Mattera, Lisa Yigit and Adrienne McCord, signed the lease as witnesses, although the lease had not yet been signed by Ann Mattera when they purported to sign it.  (Willenken Decl. Ex. I at I7; Mattera Dep. at 71:2–73:12.)  In a sworn declaration, Yigit testified that John Mattera had asked Yigit and McCord to witness the lease agreement and that Ann Mattera was not present when they did so.  (Yigit Decl. ¶ 5.)

Upon execution of the lease, Ann Mattera paid a security deposit of $4,190, which she drew on a BankAtlantic account.  (Id. at I13–I14.)  Ann Mattera proceeded to make monthly payments on the Boca Raton Condo with checks drawn on her Regent Bank and Iberia Bank accounts.  (Id. Ex. J at J20 & Ex. L at L20–21.)  John Mattera moved into the Boca Raton Condo sometime in "the end of January" 2012.  (Mattera Dep. at 11:25–12:2.)  The Boca Raton Condo

represents John Mattera's current residence, where he lives alone and operates Boss Global Media, an automobile sponsorship business owned by John Mattera.  (<u>Id.</u> at 11:15–12:2.)

In addition, Ann Mattera used her personal accounts, including those she held with Regent Bank and Iberia Bank, to make expenditures on John Mattera's behalf.  For example, on March 19, 2012 Ann Mattera obtained from Regent Bank a cashier's check for $4,709.83 and payable to Palmetto 455 Inc. to cover "replacement rent & FPL + fees." (Willenken Decl. Ex. I at I19.)  Account statements from Ann Mattera's Regent Bank account show expenditures including a $10,000 check to Maria Luisa Martini (<u>id.</u> Ex. J at J15), and payments of approximately $17,307.33 to American Express and $16,498.67 to Capital One. (<u>Id.</u> at Ex. J.)

As noted above, the PI Order dated December 1, 2011 ordered Ann Mattera to hold and retain within her control, and otherwise prevent "any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal" of assets, including money and personal property, whether "held in her name or for her direct or indirect beneficial interest," up to "the amount of potential ill-gotten gains that Ann Mattera received from" the defendants. (<u>Id.</u> Ex. A at A27–A28.)  The PI Order further prohibited Ann Mattera from incurring debt in excess of $1,000, whether by credit card or otherwise.  (<u>Id.</u>)  The PI Order contained no provisions excluding money or income from the asset freeze that Ann Mattera might earn after the date of the PI Order.  (<u>Id.</u>)

I find by clear and convincing evidence that Ann Mattera violated the PI Order by spending money on expenditures using her Regent Bank and Iberia Bank accounts, and by acquiring and disposing of assets, including at least five automobiles, while subject to the PI Order.

      c.      Ann Mattera Violated Her Disclosure Obligations Under the PI Order and <u>the Discovery Provisions of the TRO</u>

The PI Order dated December 1, 2011 required the Non-Opposing Defendants, including Ann Mattera, to provide to the SEC a verified accounting containing a "list of all accounts at all banks, brokerage firms or financial institutions" maintained by Ann Mattera at any time from January 1, 2010, and a list of "money, property, assets, and other income received by [Ann Mattera], in or at any time from January 1, 2010 to the date of the accounting, describing the source, amount, disposition, and current location of each of the items listed." (Willenken Decl. Ex. A at A29–A30, § VIII(1)–(3).)  Ann Mattera was to provide such information to the SEC "within three (3) business days of the date of th[e PI] Order, or within such extension of time as the [SEC] agrees to in writing or is otherwise granted by the Court." (<u>Id.</u>)

Additionally, the TRO dated November 17, 2011 permitted the parties to "[o]btain the production of documents, within three (3) calendar days from service by facsimile, email or otherwise of a request or subpoena, from any persons or entities, including non-party witnesses" pursuant to various provisions of the Federal Rules of Civil Procedure.  (<u>Id.</u> Ex. A at A7, § XVIII.)  The TRO directed the expedited discovery provisions to "remain in place beyond any hearing on the [SEC]'s application for preliminary injunction."  (<u>Id.</u> at A7.)

As noted above, I find by clear and convincing that Ann Mattera received a copy of the TRO, which she signed for on November 18, 2011, and the PI Order, which she signed for on December 2, 2012, and therefore had actual notice of both Orders.  (Willenken Decl. ¶ 11 & Ex. B at B1, B3.)

On November 18, 2011, the SEC served upon Ann Mattera its discovery request titled Plaintiff's First Request for Production of Documents.  (Id. ¶ 13 & Ex. C.)  Ann Mattera signed for the document request on November 23, 2011.  (Willenken Second Supp. Decl. Ex. 1.)  On April 2, 2012, the SEC mailed to Ann Mattera a letter reminding her of her discovery obligations pursuant to the Court's Orders.  (Willenken Decl. Ex. B at B6–B10.)  Regarding the PI Order, the SEC's letter reiterated that a verified written accounting from Ann Mattera "was due within three days of the entry of the [O]rder, but you have yet to provide it."  (Id. at B7.)  Regarding the TRO, the letter reviewed that production of documents from Ann mattera "was called for within three calendar days from the date of service, as set forth in the TRO Order.  To date, you have not produced a single document responsive to the Requests, nor have you raised any objections or otherwise responded to the Requests."  (Id. at B8.)

I find by clear and convincing evidence that the TRO, PI Order, and the SEC's discovery request were served on Ann Mattera as alleged by the SEC, and that Ann Mattera did not provide documents to the SEC, or respond to the SEC's discovery requests.  (Willenken Decl. ¶ 13; Willenken Second Supp. Decl. ¶ 4 & Ex. 1.)  I further find by clear and convincing evidence that Ann Mattera has failed to provide a verified written accounting as required by the PI Order.

## CONCLUSIONS OF LAW

I.   Legal Standards Governing Civil Contempt

The SEC seeks an Order holding defendant John Mattera and relief defendant Ann Mattera in civil contempt.  "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has

not diligently attempted to comply in a reasonable manner.'" Paramedics Electromedicina

Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting

King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).  "It is not necessary to show that

defendants disobeyed the district court's orders willfully."  EEOC v. Local 638, 753 F.2d 1172,

1178 (2d Cir. 1985) (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)).

        Regarding the first element, an order is "clear and unambiguous" provided it is

"specific and definite enough to apprise those within its scope of the conduct that is being

proscribed."  N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989)

(quotations omitted).  A clear and unambiguous order "leaves no uncertainty in the minds of

those to whom it is addressed, who must be able to ascertain from the four corners of the order

precisely what acts are forbidden."  King, 65 F.3d at 1058 (quotations and citations omitted).

With respect to the second element, the party seeking a civil contempt sanction bears the burden

of establishing the offense by clear and convincing evidence.  Latino Officers Ass'n of City of

N.Y., Inc. v. City of N.Y., 558 F.3d 159, 164 (2d Cir. 2009).  "In the context of civil contempt,

the clear and convincing standard requires a quantum of proof adequate to demonstrate a

'reasonable certainty' that a violation occurred."  Levin v. Tiber Holding Corp., 277 F.3d 243,

250 (2d Cir. 2002).

        To show a diligent attempt at compliance so as to negate the third element, a

defendant must demonstrate that compliance was "factually impossible."  Badgley v. Santacroce,

800 F.2d 33, 36–37 (2d Cir. 1986) (quoting United States v. Rylander, 460 U.S. 752, 757

(1983)).  Indeed, a defendant asserting that compliance with a court order constituted an inability

or impossibility must prove "clearly, plainly and unmistakably" that "compliance is impossible."

Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995); see also Nat'l Basketball Ass'n v.

<u>Design Mgmt. Consultants, Inc.</u>, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) (Buchwald, J.)

("[C]ompliance must be beyond the realm of possibility, not just difficult to achieve, before a

party will be exonerated in a contempt proceeding.").  In raising this defense, the defendant bears

the burden of production, which "may be difficult to meet . . . particularly in cases such as this

where the defendants have a long history of delay and the plaintiffs' needs are urgent."  <u>Badgley</u>,

800 F.2d at 36 (quotations and citations omitted).

      II.      <u>The Mattera Defendants Are Adjudged to Be in Civil Contempt</u>

      The TRO, PI Order, and Consent Order are clear and unambiguous so as to satisfy

the first element of a contempt finding.  Indeed, there appears to be no dispute by defendant John

Mattera or relief defendant Ann Mattera as to the meaning of the provisions contained in the

Court's Orders.  Although at one point John Mattera represented in his deposition that he "didn't

understand [] at all" the reporting and disclosure requirements of the Consent Order, Mattera

reviewed the Consent Order on the advice of his criminal counsel prior to signing it.  (Mattera

Dep. at 15:3–15:9; Willenken Decl. Ex. A at A22–A23.)  Carl Schoeppl, Mattera's criminal

counsel, approved the Consent Order "as to form."  (Willenken Decl. Ex. A at A23.)

Furthermore, Mattera admitted during his deposition to "consent[ing] to the entry of th[e Consent

Order]" (Mattera Dep. at 15:17–15:19), and has not identified any specific provision of any of

the Court's Orders that leaves uncertainty as what acts are forbidden.  <u>See King</u>, 65 F.3d at 1058.

      Turning to the defendants' proof of noncompliance with the Court's Orders—the

second requirement of a finding of civil contempt—I find such noncompliance to have been

shown by clear and convincing evidence.  <u>See Paramedics</u>, 369 F.3d at 655.  As detailed in my

Findings of Fact, I have found that John Mattera violated the Consent Order by, <u>inter alia</u>,

transferring a Lamborghini automobile to a salvage company in exchange for a check for

$28,000, which he later exchanged for a cashier's check and transferred to Ann Mattera;

incurring personal debt of approximately $114,000 following the date of the Consent Order,

despite not having reported any Post-Tax Income as defined in the Consent Order; and providing

Ann Mattera with money and cash with which to pay Mattera's personal and business-related

expenditures.  I also find by clear and convincing that Ann Mattera violated the PI Order by

leasing or purchasing at least five automobiles; making expenditures to pay John Mattera's living

expenses using bank accounts she opened after the Court's Orders became effective, including

those held with Regent Bank and Iberia Bank; failing to provide a verified written accounting to

the SEC as required by the PI Order; and failing to respond to the SEC's discovery requests as

required by the TRO.

       Lastly, I find that neither John Mattera nor Ann Mattera diligently attempted to

comply with the Court's Orders in a reasonable manner.  See Paramedics, 369 F.3d at 655.

       Accordingly, I find that the elements of civil contempt have been satisfied as to

defendant John Mattera and relief defendant Ann Mattera.  I specifically find that John Mattera

failed to comply with Section VI of the Consent Order dated November 29, 2011, and that Ann

Mattera failed to comply with Sections VI and VIII of the PI Order and Section XVIII of the

TRO.

     III.    <u>Contempt Sanctions</u>

       Upon a finding of civil contempt, a district court may impose judicial sanctions

"as a remedial measure to compensate a civil complainant."  <u>In re Grand Jury Witness</u>, 835 F.2d

437, 441 (2d Cir. 1987).  The Court has "broad discretion to fashion an appropriate coercive

remedy . . . based on the nature of the harm and the probable effect of alternative sanctions."

<u>EEOC v. Local 28 Sheet Metal Workers Int'l Ass'n</u>, 247 F.3d 333, 336 (2d Cir. 2001) (ellipsis in

original).  Civil contempt sanctions may serve the "dual purposes" of securing "future

compliance with court orders" and "compensa[ting] the party that has been wronged."  S. New

England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010) (citations omitted).

      Where a fine is to be paid to the opposing party, "the sanction should correspond

at least to some degree with the amount of damages."  King, 65 F.3d at 1062.  In calculating a

fine, a district court should consider factors "including 'the character and magnitude of the harm

threatened by continued contumacy,' the 'probable effectiveness of any suggested sanction in

bringing about [compliance],' and the contemnor's ability to pay."  Paramedics, 369 F.3d at 658

(quoting N.Y. State NOW v. Terry, 886 F.2d 53, 57 (2d Cir. 1982) (alterations in original)).

Regardless of form, a contempt sanction "may not be imposed as a purely punitive measure."

Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989).

      Guided by these principles and having found by clear and convincing evidence

the Mattera Defendants to be in civil contempt, the Court imposes the relief as set forth below,

with all relief not set forth below having been denied.

      a.     Defendant John Mattera

The Court orders the following as to John Mattera:

    1.     John Mattera shall pay the sum of $75,500, into the Court Registry Investment

          System ("CRIS") account no later than thirty (30) days from the date of this

          Order.  John Mattera is directed to provide payment by sending a cashier's check

          or money order payable to the Clerk of the Court and referencing the name and

          docket number of this action; John Mattera is further directed to send a copy of

          such cashier's check or money order to plaintiff's counsel: Karen Willenken,

Esq., Securities and Exchange Commission, 3 World Financial Center, New

York, NY 10281.  The foregoing sum represents:

- ▪ $28,500, representing the amount for which Ann Mattera sold jewelry at John Mattera's behest;

- ▪ $28,000, representing the amount of the cashier's check John Mattera transferred to Ann Mattera;

- ▪ $10,000, representing the amount John Mattera received from return of his deposit with Palm Beach Motor Cars;

- ▪ $9,000, representing the amount of indebtedness John Mattera incurred by issuing a promissory note dated December 1, 2011 to Lisa Yigit.

2.    John Mattera shall provide to the SEC and to the Court, within fourteen (14) days

from the date of this Order, a verified accounting listing all assets, liabilities, and

property currently held directly or indirectly by or for the benefit of John Mattera;

3.    John Mattera shall provide to the SEC and to the Court, within fourteen (14) days

from the date of this Order, all documents in his possession or control regarding

assets, liabilities, and property disclosed in the verified accounting ordered  in

Paragraph 2 above;

4.    John Mattera shall file with the Court an affidavit together with documentary

evidence establishing that he has fully complied with Paragraphs 1, 2, and 3

above within forty-five (45) days of this Order.  If John Mattera does not file such

evidence establishing full compliance with Paragraphs 1, 2, and 3, his Answer in

this action, filed on January 27, 2012 (Docket # 64), will be STRICKEN.  The

foregoing relief is appropriate because other sanctions are not likely to be

efficacious, John Mattera's conduct has caused significant delay and prejudiced

the SEC's ability to prove its case, and, further, John Mattera has made no

significant effort to purge himself of contempt since the SEC's May 22, 2012 application.

5.      John Mattera shall update the verified accounting required by Paragraph 2 above within five (5) days of the end of any month in which the location of any of John Mattera's assets, liabilities, or property changes, and shall produce the documents required by Paragraph 4 above for any new financial institution or storage location;

6.      From the date of this Order through the conclusion of this action, John Mattera shall provide to the SEC, within five (5) days of the end of each calendar month, documentation sufficient to identify the amount, source, and nature of all funds received directly or indirectly by him, by any of the Mattera Entities, or by any other entity of which he is an owner, manager, officer, or control person, during that month;

7.      From the date of this Order through the conclusion of this action, John Mattera shall report each month to the SEC as Post-Tax Income (as defined in Section VI(3) of the Consent Order) in the sworn accounting required by Section VI(5) of the Consent Order, any funds transferred directly or indirectly to him or Ann Mattera in the previous month, by any of the Mattera Entities or by any other entity of which he is an owner, manager, employee, or control person.  John Mattera is directed to pay 25% of any such Post-Tax Income into the Court Registry Investment System as required by the Consent Order;

8.     The stay of this action (Order dated November 29, 2011, Docket # 27) pending

resolution of the parallel criminal proceeding, <u>United States v. John A. Mattera</u>,

No. 12 Cr. 00127 (S.D.N.Y. 2012) (RJS), is VACATED;

9.     John Mattera shall provide written notice to the SEC by electronic mail and

certified mail, and to the Court by certified mail, five (5) days in advance of any

change of address;

10.    During the pendency of this action, upon a minimum of five (5) days advance

written notice to John Mattera, the SEC may physically inspect the following real

property for the purpose of surveying and photographing the personal property

contained therein:

- The apartment located at 455 E. Palmetto Park Road, Boca Raton, FL (the "Boca Raton Condo");

- The storage facility located at Eire Company, 6453 W. Rogers Circle, Boca Raton, FL;

- The storage facility located at Addison Storage, 900 N.W. 1st Street, Boca Raton, FL;

- The office located at 1600 N. Federal Highway, Boca Raton, FL;

- The safe deposit box maintained at Branch Banking and Trust; and

- Any other storage locations disclosed by John Mattera in the course of complying with the Court's Orders in this action.

b.     <u>Relief Defendant Ann Mattera</u>

The Court orders the following as to Ann Mattera:

1.     Ann Mattera shall provide to the SEC and to the Court, within fourteen (14) days

from the date of this Order, a verified accounting listing all currency, assets,

liabilities, and real and personal property currently held directly or indirectly by or for the benefit of Ann Mattera;

2.     Ann Mattera shall provide to the SEC and to the Court, within fourteen (14) days from the date of this Order, all documents in her possession or control regarding all currency, assets, liabilities, and real and personal property disclosed in the verified accounting ordered in Paragraph 1 above;

3.     Ann Mattera shall update the verified accounting required by Paragraph 1 above within five (5) days of the end of any month in which the location of any of Ann Mattera's assets, liabilities, or property changes, and shall produce the documents required by Paragraph 2 above for any new financial institution or storage location;

4.     Ann Mattera shall provide written notice to the SEC by electronic mail and certified mail, and to the Court by certified mail, five (5) days in advance of any change of address;

5.     During the pendency of this action, upon a minimum of five (5) days advance written notice to Ann Mattera, the SEC may physically inspect the following real property for the purpose of surveying and photographing the personal property contained therein:

- The apartment located at 2881 N.W. 32nd Street, Apt. 219, Boca Raton, FL;

- The safe deposit box maintained at Branch Banking and Trust; and

- Any other storage locations disclosed by Ann Mattera in the course of complying with the Court's Orders in this action.

Nothing in this Order shall vary, alter, or modify the terms of the TRO dated November 17, 2011

(Docket # 4), the Consent Order dated November 29, 2011 (Docket # 25), and the PI Order dated

December 1, 2011 (Docket # 28), all of which remain in effect.

      SO ORDERED.

                                          P. Kevin Castel
                                United States District Judge

Dated:      New York, New York
             September 25, 2012