UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

  Plaintiff,

v.

JOHN A. MATTERA, BRADFORD VAN SICLEN,
THE PRAETORIAN GLOBAL FUND, LTD.,
PRAETORIAN G POWER I, LLC,
PRAETORIAN G POWER II, LLC,
PRAETORIAN G POWER IV, LLC,
PRAETORIAN G POWER V, LLC,
PRAETORIAN G POWER VI, LLC,
DAVID E. HOWARD II, JOHN R. ARNOLD,
FIRST AMERICAN SERVICE TRANSMITTALS, INC.,
JOSEPH ALMAZON,
and SPARTAN CAPITAL PARTNERS,

  *Defendants*,

- AND -

ANN A. MATTERA, LAN T. PHAN a/k/a LAN PHAN
MATTERA, and EXECUTIVE SOURCE HOLDING,
LLC,

  *Relief Defendants*.

11 Civ 8323 (PKC)

ECF Case

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR A DEFAULT JUDGMENT AGAINST
RELIEF DEFENDANT ANN A. MATTERA**

Karen E. Willenken
Neal R. Jacobson
Securities and Exchange Commission
New York Regional Office
3 World Financial Center
New York, NY  10281
(212) 336-1100
*Attorneys for Securities
   and Exchange Commission*

April 8, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

JURISDICTION AND VENUE .......................................................................................................2

STATEMENT OF FACTS ...............................................................................................................3

    I.   Ann Mattera Has Failed to Respond to the Complaint .........................................................3

    II.  The Uncontested Allegations ................................................................................................6

        A.     The Praetorian Entities and the Fake Escrow Agent ...................................................6

        B.     Ann Mattera's Receipt of Funds ..................................................................................7

ARGUMENT ....................................................................................................................................8

    I.   Default Judgment Standard ....................................................................................................8

    II.  The Complaint Establishes that Ann Mattera Received Ill-Gotten Gains ............................9

        A.     Mattera Obtained Investor Proceeds By Fraud ...........................................................9

        B.     Mattera Transferred Fraud Proceeds to Ann Mattera ...............................................10

    III. The SEC Is Entitled to Disgorgement ..................................................................................10

    IV. Ann Mattera's Mental State Neither Excuses Her Default Nor Precludes
        the Entry of a Judgment Against Her..................................................................................12

        A.     Ann Mattera's Health Does Not Excuse Her Failure to Answer ............................13

        B.     Ann Mattera Is Not Currently Incompetent ..............................................................14

CONCLUSION...............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Aaron v. SEC, 446 U.S. 680 (1980) .................................................................................... 9

Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61 (2d Cir. 1981) ......................................... 9

Basic, Inc. v. Levinson, 485 U.S. 224 (1988) ..................................................................... 9

Bermudez v. Reid, 733 F.2d 18 (2d Cir. 1984) ................................................................... 8

Flaks v. Koegel, 504 F.2d 702 (2d Cir. 1974) .................................................................... 9

Fustok v. ContiCommodity Services, Inc., 873 F.2d 38 (2d Cir. 1989) ............................. 9

SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998) ............................................................... 10

SEC v. Cherif, 933 F.2d 403 (7th Cir. 1991) ...................................................................... 3

SEC v. McGinn, Smith & Co., No. 1:10-cv-457 (GLS/DRH), 2011 WL 1770472
   (N.D.N.Y. May 9, 2011) (unpublished) ......................................................................... 3

SEC v. Monarch Funding Corp., 192 F.3d 295 (2d Cir. 1999) ......................................... 9

SEC v. Ross, 504 F.3d 1130 (9th Cir. 2007) ...................................................................... 3

USA v. Mattera, 11-cr-127 (RJS) (S.D.N.Y.) ..................................................................... 1

**Statutes and Rules**

Federal Rule of Civil Procedure 4(d)(3) (2011) ................................................................ 4

Securities Act of 1933 § 20, 15 U.S.C. § 77t(b) ................................................................ 2

Securities Act of 1933 § 22(a), 15 U.S.C. § 77v(a) ........................................................... 2

Securities Exchange Act of 1934 § 21(d), 15 U.S.C. § 78u(d) .......................................... 2

Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa .................................................. 2

**Treatises**

10A Wright, Miller, & Kane, Federal Practice & Procedure § 2685 (3d ed. 1998) ......... 8

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b), Local Rule 55.2(b), and the Default Judgment Procedure of Judge P. Kevin Castel, Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its motion for a default judgment against Relief Defendant Ann A. Mattera ("Ann Mattera").

## INTRODUCTION

The SEC properly served Relief Defendant Ann Mattera by sending her a copy of the complaint filed in this action (the "Complaint" or "Compl.") together with a request for a waiver of service. Ann Mattera executed the waiver of service but failed to answer, plead, or otherwise defend this action.

The Complaint adequately alleges that from approximately August 2010 through October 2011, John A. Mattera ("Mattera"), together with a number of other entities and individuals, violated the federal securities laws by offering securities in limited liability companies that purportedly owned, but did not in fact own, shares of Facebook, Inc., Groupon, Inc., and other desirable private companies that were expected to engage in initial public offerings in the near future (collectively, the "Pre-IPO Companies"). On the same day the complaint was filed, Mattera was criminally indicted for the same conduct. See USA v. Mattera, 11-cr-127 (RJS) (S.D.N.Y.) (the "Criminal Action"), Docket #13 (the "Indictment"), attached as at Exhibit 12 to the Declaration of Karen Willenken dated April 8, 2013 ("Willenken Decl."). He pled guilty to the indictment on October 2, 2012. (Willenken Decl. ¶ 25 and Ex. 13).

Mattera conducted unregistered offerings and used the funds raised through these offerings not to purchase the shares of Pre-IPO Companies that the investors had been promised, but to fund Mattera's lavish lifestyle. (Compl. ¶ 88-89). Defendant First American Service Transmittals, Inc. ("FAST") received investor funds in its capacity as "escrow service" but then

transferred them almost immediately to Mattera's alter ego entities. (Id. at ¶ 82-87). Those entities then spent the funds for numerous purposes unrelated to the investments, and they transferred $2.19 million to a brokerage account at E*Trade Financial, LLC in the name of Ann Mattera with account number ending in 0901 (the "E*Trade Account").

The Complaint's allegations and the documentary evidence submitted in support of the instant motion demonstrate that from approximately August 2010 through November 2011, Mattera raised over $12.8 million through these fraudulent offerings and transferred approximately $2.19 million of this amount to the E*Trade Account for no consideration. The account had almost no unrelated assets and received no unrelated funds during the period. Ann Mattera has no right to retain any of the fraud proceeds transferred to her account, yet we understand that she recently has asserted that her interest in this account should preclude it from being forfeited in the Criminal Action. Accordingly, the SEC respectfully requests that the Court enter a default judgment ordering Ann Mattera to disgorge $560,720.52, the amount remaining in the E*Trade Account at the time its contents were seized pursuant to a preliminary order of forfeiture, and that such judgment be offset by any portion of the E*Trade Account funds that becomes subject to a final order of forfeiture in the Criminal Action.

## JURISDICTION AND VENUE

The SEC brings this action pursuant to the authority conferred by Section 20 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d).

This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. These statutes give the Court "the power to exercise personal jurisdiction over any party with minimum

2

contacts with the United States" who is "properly served." SEC v. Ross, 504 F.3d 1130, 1139 (9th Cir. 2007). Ann Mattera has the requisite minimum contacts with the United States because she resided in Florida at the time the Complaint in this matter was filed, and because she has maintained a Florida post office box throughout this action. (Willenken Decl. ¶¶ 3, 4, 10).

This Court has subject matter over the Defendants in this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa because, as alleged in the Complaint, Defendants, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. (Compl. ¶ 12). Because a relief defendant is not a real party in interest, she has no interest in the subject matter litigated and it is unnecessary to obtain subject matter jurisdiction over her once subject matter jurisdiction over the defendant is established. SEC v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991); see also SEC v. McGinn, Smith & Co., No. 1:10-cv-457 (GLS/DRH), 2011 WL 1770472 (N.D.N.Y. May 9, 2011) (unpublished) (finding subject matter jurisdiction over relief defendant wife).

## STATEMENT OF FACTS

### I.  Ann Mattera Has Failed to Respond to the Complaint

On November 17, 2011, the SEC filed the Complaint and sent a copy to Ann Mattera by United Parcel Service overnight mail. (Willenken Decl. ¶ 3 and Ex. 1). On December 1, 2011, the SEC properly served Ann Mattera by sending her a copy of the Complaint, two copies of a written request for a waiver of service of process, and a prepaid envelope for returning the waiver of service. (Willenken Decl. ¶ 5 and Ex. 2.) Ann Mattera returned an executed waiver form on February 27, 2012. (Willenken Decl. ¶ 9 and Ex. 4) Because the summons was sent on

December 1, 2011, the deadline for her to answer or respond to the complaint was January 30, 2012. (Fed. R. Civ. Proc. 4(d)(3)).

As of April 8, 2013, Ann Mattera has not filed an answer or responsive pleading to the Complaint. (Willenken Decl. ¶ 19.) Accordingly, on March 26, 2013, the Clerk of the Court issued a Clerk's Certificate noting her default. (Willenken Decl. ¶ 19 & Ex. 7.)

Ann Mattera has consistently failed to participate in this litigation. Not only has she failed to answer or otherwise respond to the allegations of the Complaint, but she has failed to provide accountings required by this Court's Orders and has failed to respond to requests for documents. (Willenken Decl. ¶ 18).

Her failure to participate is not due to any lack of notice in this action. Ann Mattera's recent claim to the contrary, that she "never received a copy of complaint before this hard copy," is overwhelmingly inconsistent with the evidence – most of which was already submitted to the Court in the contempt proceeding last year – and with the findings of this Court in the contempt proceeding.

On September 26, 2012, this Court found Ann Mattera in contempt for failing to provide an accounting or respond to document requests. (The "Contempt Order," Docket #106 at 18-19). In doing so, the Court found <u>not credible</u> Ann Mattera's claims that she had not received two UPS packages that she signed for in late 2011 – one of which was sent on November 17, 2011 and contained a copy of the temporary restraining order issued by the Court that day. (<u>Id.</u> at 15). The SEC's Complaint in this action was sent in the same UPS package as the temporary restraining order. (Willenken Decl. ¶ 3). Ann Mattera's execution of the waiver of service form further confirms that, contrary to her current assertion, she received the Complaint within three months of its' filing.

4

In addition, at her oral request, the SEC staff sent Ann Mattera a third copy of the Complaint by electronic mail on March 15, 2012, providing her with the contact information for the Court's Pro Se Office and warning her that the SEC might petition the Court for a default judgment if she failed to answer or otherwise respond. (Willenken Decl. ¶ 10 & Ex. 3). While Ann Mattera did not respond to that email, she did respond to an email sent by the SEC staff on March 19, 2012. (Willenken Decl. ¶ 11 & Ex. 5). Accordingly, Ann Mattera had access to her email in March 2012 and was capable of receiving the additional copy of the Complaint that was emailed to her that month at her request.

Ann Mattera received the Complaint not one but at least three times, and her representation to the contrary is merely a transparent effort to avoid legal process. In this, her behavior is consistent with her behavior throughout this action, in which she has actively tried to avoid receiving papers from the SEC. In the months leading up to the issuance of the Contempt Order, she moved without notifying the SEC. (Willenken Decl. ¶ 13 - 15). She provided a post office box address in her waiver of service and in an oral conversation with the SEC staff, but packages sent to her post office box in the weeks immediately following that conversation were returned as unclaimed. (Willenken Decl. ¶ 10, 12).

In July 2012, while the SEC's request for a finding of contempt against Ann Mattera was pending, a package that the SEC had attempted to send to Ann Mattera by UPS was returned with the notation "Return to Shipper – Reason for Return: Receiver Did Not Want, Refused Delivery." (Willenken Decl. ¶ 14). Ann Mattera then moved again, without providing notice to the SEC. (Id.)

Notwithstanding the Court's September 26, 2012 Order that Ann Mattera notify the SEC and the Court five days in advance of any change of address (Contempt Order at 27), Ann

5

Mattera has provided the SEC with no information about her whereabouts. Recent UPS packages sent to the address at which she lived when she was served with the Order to Show Cause in the contempt proceeding have been returned with a notification that she no longer lives there. (Willenken Decl. ¶ 17).

Ann Mattera recently has submitted documents to the SEC staff and to the Court in which she seeks to explain her failure to answer in two ways. First, she submitted medical reports that presumably were intended to show that she had not been capable of answering the Complaint. (See Willenken Decl. Ex. 16 & 17). Some documentation of her medical condition also had been submitted during the contempt proceeding by her son. (See Willenken Decl. Ex. 15). In addition, she recently submitted a letter in which she claimed that she had "never received record of complaint before this hard copy. I have no internet connection." (Letter from Ann Mattera to the Court dated March 28, 2013, Docket #120). At no time has she, or anyone related to her, submitted documentation indicating that Ann Mattera has ever been declared legally incompetent. (Willenken Decl. ¶ 34).

## II. The Uncontested Allegations

### A. The Praetorian Entities and the Fake Escrow Agent

The Complaint alleges that Mattera, working with and through other defendants, defrauded investors out of at least $12.8 million through unregistered offerings of securities issued by Praetorian G Power I, LLC, Praetorian G Power II, LLC, Praetorian G Power IV, LLC, Praetorian G Power V, LLC, Praetorian G Power VI, LLC (the "Praetorian Entities"). (Compl. ¶ 1, 2.) None of these entities ever registered its offerings with the Commission. (Id. ¶ 17). Mattera, together with Defendant Bradford Van Siclen, controlled these entities. (Id. ¶ 14). Each of the Praetorian Entities purportedly already held shares of one of several desirable Pre-

6

IPO Companies at the time of the offerings. (Id. ¶ 3). In truth and in fact, however, as Mattera knew or recklessly disregarded, none of the Praetorian Entities actually owned the shares they purported to own. (Id. ¶ 5, 70; Willenken Decl. Ex. 13).

Investors were asked to wire their funds to a purported escrow agent, FAST, and were told that their funds would be held in escrow until the IPO or another triggering event occurred. (Id. ¶ 4.) Mattera sent wire instructions to at least one broker-dealer that identified FAST as "escrow service for the Praetorian Fund." (Id. ¶ 43). Instead of keeping the funds safe, however, the purported escrow agent almost immediately wired out the funds to the accounts of entities controlled by Mattera. (Id. ¶ 5, 87.)

### B.     Ann Mattera's Receipt of Funds

Ann Mattera is Mattera's mother. (Id. ¶ 23). During the course of the Praetorian offerings, at least $12.8 million was received from investors, and most of those funds were transferred from the FAST "escrow" accounts to accounts in the name of Rhino Island Capital, Inc. ("Rhino") and Mattera Asset Management, Inc. ("MAM"). (Compl. 87). From the Rhino Island Capital and Mattera Asset Management accounts, some of the funds were transferred to another Mattera-controlled entity, Boss International Marketing, Inc. ("Boss" or, collectively with Rhino and MAM, the "Mattera Entities.") (See Declaration of Richard Needham dated November 17, 2011, Docket #13, ¶ 122). The Mattera Entities then transferred $2.19 million of the funds to an account in Ann Mattera's name at E*Trade Financial, LLC. (Willenken Decl. 20 & Ex. 10). Ann Mattera provided no services in exchange for these funds and has no legitimate interest in them. (Compl. ¶ 89.)

While the money was transferred to an account in Ann Mattera's name, it does not appear that she withdrew, or made purchases with, any of the funds transferred into the account. Rather,

7

it appears that she allowed John Mattera to use the account for his own personal trading purposes. The transfers were sometimes accompanied by wire instructions with explanations like "transfer to personal brokerage acco[unt]." (Willenken Decl. 20 & Ex. 10). During his deposition in the contempt proceeding, Mattera testified that the E*Trade Account "was a family trading account" that he thought was in both his name and Ann Mattera's. (Deposition of John Mattera on May 30, 2012 at 152, Willenken Decl. ¶ 23 and Ex. 11). The account was heavily traded on margin, and despite the lack of any significant withdrawals from the trading account during the fraud, it appears that over 70% of the money transferred into the account was lost. (Willenken Decl. ¶ 22 & Ex. 8). The account has been liquidated and its contents seized, and we understand from the criminal authorities that its value at the time of the seizure was only $560,720.52. (Willenken Decl. 26 and Ex. 14). Although the contents of the E*Trade Account have been seized by criminal authorities, there has not yet been a final order of forfeiture with respect to the funds. (Willenken Decl. ¶ 27). Ann Mattera recently submitted a letter to the criminal authorities in which she sought to assert her interest in the account. (Willenken Decl. ¶ 30 & Ex. 16).[1]

## ARGUMENT

### I. Default Judgment Standard

The entry of a default judgment is left to the "sound judicial discretion" of the court. 10A Wright, Miller, & Kane, Federal Practice & Procedure § 2685 (3d ed. 1998). Where, as here, a "party fails to respond [to an action], . . . the court is ordinarily justified in entering a judgment against the defaulting party." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). In determining whether to enter a default judgment, the Court should accept as true all of the factual allegations

---

[1] We have been advised by the criminal authorities that they do not expect a final order of forfeiture to be entered in the criminal action until the ancillary forfeiture proceedings are concluded some time after John Mattera's sentencing, which is currently scheduled to occur in early June 2013.

8

in the Complaint, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

The "quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). Even when the amount is not liquidated or susceptible of mathematical calculation, the Court need not hold an evidentiary hearing to determine the amount of damages, "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). This basis may be provided by "detailed affidavits or documentary evidence...." Id. The Commission is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp., 653 F.2d at 65.

## II. The Complaint Establishes that Ann Mattera Received Ill-Gotten Gains

### A. Mattera Obtained Investor Proceeds By Fraud

To establish a violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC must show: (1) a materially false or misleading statement or omission, (2) in connection with the purchase or sale (for purposes of the Exchange Act), or in the offer or sale (for the purposes of Securities Act), of securities, and (3) scienter.[2] See, e.g., Basic, Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988); SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999).

Mattera falsely told investors, and directed others to tell investors, that the Praetorian Entities owned shares of desirable Pre-IPO Companies. In reality, the Praetorian Entities never owned any shares. Compounding the falsehood, Mattera did not keep the funds in escrow as

---

[2] The SEC must establish scienter to prove violations of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5. See Aaron v. SEC, 446 U.S. 680, 685 (1980). A showing of mere negligence is sufficient to establish a violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act. Id. at 696.

promised, nor did he use them to purchase shares for the Praetorian Entities; instead, he used them to fund his own lavish lifestyle and to make gifts to family members. Because the ownership of shares in the Pre-IPO Companies was the sole purported benefit of investing in the Praetorian Entities, the misrepresentation about share ownership clearly was material. Mattera acted with scienter because, as a control person of the Praetorian Entities, he knew that they did not own shares of the Pre-IPO Companies. (Compl. ¶¶ 5, 40-49, 70; Willenken Decl. Ex. 13).

### B.  Mattera Transferred Fraud Proceeds to Ann Mattera

As demonstrated by Exhibits 9 and 10 to the Willenken Declaration, Ann Mattera's E*Trade Account received at least $2.19 million from the Mattera Entities. Mattera controlled those entities, and from at least August 2010 through September 2011, almost all of the funds in the Mattera Entities' bank accounts were investor proceeds. (Compl. ¶ 87, 88). The uncontested evidence shows that Ann Mattera received fraud proceeds.

### III.  The SEC Is Entitled to Disgorgement

"Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." SEC v. Cavanagh, 155 F.3d 129, 136 (2d Cir. 1998); see also id. at 137 ("Allowing [relief defendant] to now claim valid ownership of those proceeds would allow almost any defendant to circumvent the SEC's power to recapture fraud proceeds, by the simple procedure of giving stock to friends and relatives, without even their knowledge."). Here, Ann Mattera was a recipient, without legitimate claim thereto, of proceeds of the fraudulent and illegal sales of the securities described above. Attached as Exhibit 10 to the Willenken Declaration is a summary of transfers of investor money between the Mattera Entities and the Ann Mattera E*Trade Account. The net transfers into the

10

account totaled $2.19 million. (Willenken Decl. 21 & Ex. 10.) As pleaded in the Complaint, the Mattera Entities had almost no funds during the relevant period that came from sources unrelated to the fraud; accordingly, all funds transferred from the Mattera Entities to Ann Mattera constituted fraud proceeds. For purposes of this motion, Ann Mattera is deemed to have admitted the Complaint's allegation that she provided no compensation or services in exchange for these funds. Accordingly, Ann Mattera should not be permitted to retain any of the $2.19 million of fraud proceeds she received.

In this case, Ann Mattera's interest in the E*Trade Account was never more than nominal. Although the E*Trade Account was opened in 2002, its net account value on August 31, 2010 – the end of the first month in which the Complaint alleges the fraud began (Compl. ¶29) – was less than $8,000, and the account's cash balance was $0.32. (Willenken Decl. ¶ 20 & Ex. 8). It was only after Mattera began transferring the proceeds of the Praetorian fraud to the E*Trade Account, beginning in September 2010, that the account's net value became significant. (Id.) From September 2010 through November 2011, the account received no incoming funds other than those transferred by the Mattera Entities.[3] (Id.)

Although the account received at least $2.19 million in fraud proceeds, most of that money appears to have been lost as a result of heavy trading in the account. (Willenken Decl. ¶ 22, 26 & Ex. 8, 14). Because there is no evidence that Ann Mattera spent or withdrew any of the money that was deposited into the E*Trade Account, the SEC does not seek a judgment for the full amount she received. Instead, the SEC seeks a judgment of $560,720.52, the amount

---

[3] The $2.19 million net transfers into the account identified by the SEC staff do not include $35,000 transferred into the E*Trade Account in September 2010 from an account in the name of Boss International Marketing, Inc. at PNC Bank. Although the transfers occurred during the fraud, the SEC staff has not performed a detailed analysis of the activity in PNC Bank account and therefore cannot represent that they were fraud proceeds. They were, however, funds transferred from an account in the name of one of the Mattera Entities – not funds transferred from any account in Ann Mattera's name.

seized by criminal authorities from the E*Trade Account. (Willenken Decl. 26 and Ex. 14). The judgment would protect against the possibility that Ann Mattera successfully recovers, in an ancillary forfeiture proceeding in the Criminal Action, some or all of the funds transferred to the E*Trade Account.

The SEC requests that the judgment be made payable within fourteen days after the funds seized from the E*Trade Account become subject to a final order of forfeiture or other final disposition. If a final order of forfeiture is entered with respect to all of the funds in the account, or if Ann Mattera consents to the forfeiture or otherwise formally relinquishes her entire interest in the account, then the judgment will be offset by that amount and no further action on Ann Mattera's part will be necessary to satisfy the judgment. If, however, Ann Mattera successfully asserts an interest in the funds seized from the account, then the judgment will become due and payable to the SEC in this action within fourteen days after the final determination is made in the ancillary criminal forfeiture proceeding, and only the portion, if any, of the final forfeiture will be offset against her obligation. She would then be required to pay to the SEC any portion of the E*Trade Account funds that is awarded to her in the ancillary forfeiture proceeding.

## IV. Ann Mattera's Mental State Neither Excuses Her Default Nor Precludes the Entry of a Judgment Against Her

Ann Mattera recently submitted to the Court a collection of documents, which we received on April 1, 2013. In her transmittal letter to the Court, she wrote that "I have been ill since this happened. My confusion is high. I have many dealings with confusion and memory lapse and have been under care. My mental health has affected my physical health. Enclosed please find copies from my doctors confirming my statements." (Willenken Decl. ¶ 32 & Ex. 17.) It is unclear whether she is asserting that her illnesses and "confusion" excuse her previous failure to answer the complaint, that they render her incompetent for the purpose of

12

having a default judgment entered against her, or both. In our view, she has not demonstrated either.

### A.     Ann Mattera's Health Does Not Excuse Her Failure to Answer

First, Ann Mattera's poor health and alleged mental deficiencies do not explain her failure, in over a year, to answer or otherwise respond to the Complaint. According to documents that were admitted into evidence in the contempt proceeding, Ann Mattera was diagnosed with pneumonia and Chronic Obstructive Pulmonary Disease in mid-April and was briefly admitted to the hospital. (Medical report of Kathleen Joseph-McBean dated April 18, 2012, Willenken Decl. ¶ 29 & Ex. 15). A consultation was ordered in part to evaluate "change in mental status," but the report from the consulting physician states that the patient "[d]enies any headache or change in mental status," does not appear to reflect the observation of any neurological problems, and does not include in the physician's "impressions" any reference to concerns about Ann Mattera's mental status. (Medical report of Yared Aklilu dated April 18, 2012, Willenken Decl. ¶ 29 & Ex. 15). A subsequent medical report stated that she was "alert" with appropriate behavior, fluent speech, and "thought process intact" (Medical report of Louis Tumminia dated May 3, 2012, Willenken Decl. ¶ 29 & Ex. 15). These reports from April and May of 2012 explain nothing about Ann Mattera's failure to answer or otherwise respond to the Complaint between November 17, 2011 and the due date of January 30, 2012.

Moreover, this Court found in the contempt proceeding that Ann Mattera engaged in numerous financial transactions in the months between November 17, 2011 and her hospital admission on April 18, 2012 – transactions that a mentally incompetent person could not have performed. For example, she:

- Leased an Audi automobile on December 2, 2011 (Contempt Order at 15);

13

- Opened a bank account at Iberia Bank on December 27, 2011 (Id. at 10);

- Opened a bank account at Regent Bank on December 29, 2011 (Id.);

- Leased a condominium for her son on December 15, 2011 (Id. at 16);

- Purchased an Audi automobile on January 25, 2012 (Id. at 15); and

- Sold jewelry on behalf of John Mattera on approximately February 27, 2012 (Id. at 12).

Not only were her transactions numerous, but several of them required her to convince businesses that she was gainfully employed and creditworthy. If she was competent enough to perform these acts, she was capable of answering or otherwise responding to the Complaint.

### B. Ann Mattera Is Not Currently Incompetent

As to her current mental state, Ann Mattera appears to have been diagnosed in November 2012 with some degree of "psychosis" and "anxiety." The medical report mentions possible delusions and impairment. (Medical report of Jacqueline Pevny, M.D., dated November 20, 2012, Willenken Decl. ¶ 29 & Ex. 15). Yet her regular physician states that her "medical history of brain tumors, COPD, GERD, Diverticulitis and other conditions" have "subsided through my care" and that her "medical conditions have improved over time." (Letter from Louis G. Tumminia, D.O., dated March 12, 2013, Willenken Decl. ¶ 29 & Ex. 15). She appears well enough to have understood the significance of the recent letter in which we stated that the SEC intended to move for a default judgment against her, and she successfully contacted the Court and mailed papers by certified mail to the Court and the SEC staff. (Willenken Decl. ¶ 32). In addition, she was recently well enough to understand the forfeiture notice that was sent to her by criminal authorities in the Criminal Action, and to assert her interest in the E*Trade Account in that proceeding. (Willenken Decl. ¶ 30 & Ex. 16). It appears that any mental issues Ann

Mattera was suffering late last year have been addressed or resolved, and that she is competent to participate in this action.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant its application for a default judgment against Relief Defendant Ann Mattera. A proposed order of default judgment is attached hereto as Appendix A.

Dated: April 8, 2013
      New York, New York

Respectfully submitted,

*/s/ Karen Willenken*

Karen E. Willenken
Neal R. Jacobson
ATTORNEYS FOR PLAINTIFF
Securities and Exchange Commission
3 World Financial Center, Suite 400
New York, New York 10281-1022