UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                                  :    ┌─────────────────────────────┐
SECURITIES AND EXCHANGE COMMISSION,               :    │ USDC SDNY                   │
    Plaintiff,                                     :    │ DOCUMENT                    │
                     v.                            :    │ ELECTRONICALLY FILED        │
                                                  :    │ DOC #:                      │
JOHN A. MATTERA, et al.,                           :    │ DATE FILED:    9/4/13       │
    Defendants,                                    :    └─────────────────────────────┘
                                                  :
- AND  -                                           :
                                                  :
ANN A. MATTERA, et al.,                            :
    Relief Defendants.            :                :
                                                  :
```

11 Civ. 8323 (PKC)
ECF CASE

## DEFENDANT JOSEPH ALMAZON ANSWER AND OBJECTION TO THE SEC MOTION FOR DISGORGEMENT, CIVIL PENALTY AND EXTENSION OF ASSET FREES AGAINST DEFENDANTS JOSEPH ALMAZON ANDD SPARTNA CAPITAL PARTNERS AND RELIEF DENFEDNANT EXECUTIVE SOURCE HOLDING LLC. AND REQUEST FOR HEARING OF THE AMOUNT OF DISGORGEMENT AND CIVIL PENALTY

COMESNOW, Defendant Joseph Almazon, pro se, and files ANSWER AND

OBJECTION TO THE SEC MOTION FOR DISGORGEMENT, CIVIL PENALTY AND

EXTENSION OF ASSET FREES AGAINST DEFENDANTS JOSEPH ALMAZON ANDD

SPARTNA CAPITAL PARTNERS AND RELIEF DENFEDNANT EXECUTIVE SOURCE

HOLDING LLC. AND REQUEST FOR HEARING OF THE AMOUNT OF

DISGORGEMENT AND CIVIL PENALTY.


The Defendant is simultaneously filing its Memorandum in Support of DEFENDANT

JOSEPH ALMAZON OBJECTION TO THE SEC MOTION FOR DISGORGEMENT, CIVIL

PENALTY AND EXTENSION OF ASSET FREES AGAINST DEFENDANTS JOSEPH

ALMAZON ANDD SPARTNA CAPITAL PARTNERS AND RELIEF DENFEDNANT

EXECUTIVE SOURCE HOLDING LLC. AND REQUEST FOR HEARING OF THE

AMOUNT OF DISGORGEMENT AND CIVIL PENALTY.

Respectfully Submitted,

Joseph Almazon
27 Grape Lane
Hicksville, NY 11801

**DEFENDANT JOSEPH ALMAZON ANSWER AND OBJECTION TO THE SEC
MOTION FOR DISGORGEMENT, CIVIL PENALTY AND EXTENSION OF ASSET
FREES AGAINST DEFENDANTS JOSEPH ALMAZON ANDD SPARTNA CAPITAL
PARTNERS AND RELIEF DENFEDNANT EXECUTIVE SOURCE HOLDING LLC.
AND REQUEST FOR HEARING OF THE AMOUNT OF DISGORGEMENT AND
CIVIL PENALTY**

On November 17, 2011, Plaintiff Securities and Exchange Commission ("SEC")

commenced an action by filing a Complaint, Order to Show Cause, and supporting papers,

including a memorandum of law, declarations, and exhibits, for its emergency application for a

temporary restraining order, preliminary injunction, asset freeze and other relief;

WHEREAS the same day, the Court entered an Order to Show Cause, Temporary

Restraining Order, and Order Freezing Assets and Granting Other Relief (the "November 17,

2011 Order");

**I.   STATUS OF THE CASE**

1.      On November 17, 2011 the SEC applied ex parte to the Court for a Temporary

Restraining Order, and Order Freezing Assets and Granting Other Relief ("Temporary

Restraining Order" or "TRO"). (Docket # 4; Sept. 17, 2012 Evid. Hr'g ("Sept. 17 Hr'g") Ex. 20.)

The Court granted the SEC's application for the TRO that same day. (Id.)

2.      On November 29, 2011, upon the advice of his attorney at that time, Defendant Joseph

Almazon entered into a Stipulation and Consent Order Imposing Preliminary Injunction and

Other Relief against Defendants Joseph Almazon and Spartan Capital Partners and Relief

Defendant Executive Source Holding, LLC.

3.     On March 15, 2012, this Court entered a Judgment (hereinafter the "Judgment") as to Defendants Joseph Almazon and Spartan Capital Partners and Relief Defendant Executive Source Holding, LLC ordering that "Defendants shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission.  Prejudgment interest shall be calculated from June 1, 2011 . . ."

4.     Further the Judgment allows Defendant Almazon to "use 75% of the Post-Tax income for his own purposes."

5.     On September 24, 2012, John A. Mattera entered into a plea agreement with the Department of Justice. (Plea Agreement Attached and incorporated herein as Exhibit 1)

6.     On October 2, 2012, Mattera pleaded guilty to transferring $11 million from investors into an escrow account, rather than safeguarding it ahead of the initial public offerings, and taking an additional $2 million of investor money. As part of his plea in Manhattan federal court, Mattera, 50, agreed to pay restitution to the defrauded investors and forfeit $13 million, the amount of proceeds traceable to the commission of the offense.  Further, U.S. District Judge Richard Sullivan in Manhattan ordered Mattera jailed pending his sentencing. Mattera faces a potential 10 to 15-1/2 years in prison under a plea agreement with prosecutors. Mattera's tentative sentencing date is Feb. 1, 2013.   See USA v John Mattera, U.S. District Court for the Southern District of New York, No. 12-00127.

7.      August 6, 2013 The United States District Court, Southern District of New York USA v

John Mattera, U.S. District Court for the Southern District of New York, Case No 12 Cr. 127,

USM Number 7650-004, entered a judgment against John A. Mattera for $13,456,859.00 with a

forfeiture of $11,500,000.00 in cash.

## II.     FACTS

8.      On March 15, 2012, this Court entered a Judgment (hereinafter the "Judgment") as to

Defendants Joseph Almazon and Spartan Capital Partners and Relief Defendant Executive

Source Holding, LLC.  This Judgment was based upon a Consent Judgment dated March 13,

2013, signed by Joseph Almazon at the advice of his then counsel, Gerald A. Alder.   The Order

stated that "Defendants shall pay disgorgement of ill-gotten gains, prejudgment interest thereon,

and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d) and

Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  The Court shall determine the

amounts of the disgorgement and civil penalty upon motion of the Commission.  Prejudgment

interest shall be calculated from June 1, 2011 . . ."

9.      The Judgment specifically allows Defendant Almazon to "use 75% of the Post-Tax

income for his own purposes."

## III     ARGUMENT

**A.      The Disgorgement Amounts should be based on facts and not assumptions without**

**even casual connection, and if there is any doubt then a hearing should be held and the**

**SEC should be made to support its request based on facts and testimony**

10.     Throughout the declaration of Melissa Coppola, it is made clear that there are many assumptions made by the SEC.  Financial disgorgement should be precise or at the minimum causally connected and not just mostly presumptions.  For example in Ms. Coppola declaration she states that "Funds that appear to have been intended" (Page 3. Paragraph a. line 2; "Executive Source appears to have been a markup of $1" (Page 3. Paragraph c, line 2; "Contrary to Amazon's assertion in his deposition that he personally invested in the vehicle that purportedly owned Fisher, most of the money used to purchase the shares appears to have come from third parties" Page 4, paragraph 4 line 1; "apparent attempted investments" Page 7 paragraph 16 line 4; "based upon these assumptions" Page 8, paragraph 21 line 1; "we assumed" Page 8,, paragraph 20 line 2.  Further in Exhibit 4 there contained investments from "Unknown" on 2/17/2011 in the amount of $5,000, asking the Almazon defendants to disgorge to an unknown person.  Exhibit 4 also contains an entry of $5000 to Donna E. Merian for 5,000 and the apparent investment is unrelated yet calculated in the totals of Exhibit 4.  This Victim List provided by the SEC in USA v John Mattera, U.S. District Court for the Southern District of New York, Case No 12 Cr. 127, USM Number 7650-004 excluded any mention of Joseph Almazon, Executive Source Holdings, LLC or Spartan Capital Partners. The SEC has a copy of $20,000 shares of Fisker owned by Joseph Almazon yet it appears nowhere in the calculations or on the victim list. Reduce.  Executive Source Holdings, LLC was defrauded  $38,500.00 by John Mattera yet it appears nowhere in the calculations or on the victim list. Mr. Almazon and Executive were  entitled to compensation from the funds recovered by the Department of Justice had the SEC acknowledge Almazon and Executive Source Holdings, LLC as a victim of Mattera's fraud. Additionally the list is inaccurate and incomplete.  For example, on page 8 lists Mike or Donna Graham for $50,000 and on page 10 shows Mike Graham $50,000 again.

(Double Entry); on page 9 shows Jac-Mar C/O Mark Pyms for $25,000 and on page 10 shows

Mark Pyms (Jac-Mar) for $25,000 again. (Double Entry); on page 10 shows Neil Strosneider for

$25,000 and according to his broker, his money was returned prior to the fraud happening. No

money owed to him. On page 8 is Dorothy Eileen Chutz for $150,000 which is the name of Ron

Chutz's wife. She did not put in any money other than Ron Chutz's $100,000. There is no telling

how much other of the information listed in inaccurate. Exhibit 4 states that the total markups

based on "estimated markup" totals $194,635.00 and attributes the balance of $139,455 as

possible higher markup or misappropriation of funds without any proof other than asking this

court to take a leap of faith and rubber stamps the SEC proposed numbers, discounting the fact

the other deposits came from other sources not involved with the Praetorian investments.  Some

of these other sources included personal money, investments, and money from services provided

unrelated to investments.  Mr. Almazon has always maintained that the markup was around

$197,000.  He was pretty darn close, and the SEC should not be allowed to make the jump

adding an additional $139,455.  The SEC should not be allowed to make assumptions and ask for

disgorgement from unrelated funds without showing a causal connection.  Every business

transaction should not be considered a casual connection just because the SEC has not done its

due diligence.  Additionally, the checks in the amounts of $17,305.51 and $9,555 for a total of

$26,860.51 were for repayment of a personal investment made in a penny stock company ticker

BTHR. Mr. Almazon  and witnesses can be subpoena if a hearing is granted by this Court.  A

hearing is necessary to facilitate a true calculation on monies subject to disgorgement and should

not be "approximately" Page 8, Paragraph E. Line 3 of the SEC Memorandum of Law in Support

of Its Motion for Disgorgement, Civil Penalty and Extension of Asset Freeze or based on

estimates "the Commission staff estimates that all of the payments from Eastern Institutional

Funder were commissions" Page 10, paragraph 2 line 6 of the SEC Memorandum of Law in Support of Its Motion for Disgorgement, Civil Penalty and Extension of Asset Freeze. Mr. Almazon estimation of $197,000 was quite accurate.

**B.      The Defendant did not comprehend the rights he was giving up by signing the Consent Agreement and was under the influence on the day he signed the consent agreement.**

11.      Beginning in the year 2011, Mr. Almazon begin to struggle with alcohol abuse and was diagnosed by Dr. Jennifer N. Duffy, Ph.D., Clinical Psychologist with a MAST that is indicative of Alcohol Abuse brought on by stress in response to specific situational stress interfering in social/emotional/occupational functioning. (See exhibit 1) In May of 2011, Mr. Alamazon began to deal with his alcohol problem. Upon the realization that his company was under investigation by the SEC he relapsed whereas he began to drink excessively once again. On the day, prior signing the Consent Agreement he was drinking in the Capital Grill. Afterwards he went to his attorney's office and was told to sign documents. No one asked him if he was under the influence of mind altering substance such as alcohol or if he understood what he was signing. Mr. Almazon was told to sign here and here and here, he merely signed where told and did not fully comprehend what he was signing. Mr. Almazon continued drinking excessively until about 3 months ago when he again work on his sobriety that he maintains today. Never would Mr. Almazon have waived his right with regard to the standards for summary judgment contained in Rule 65 of the FRCP. Nor would he have thought that basis of affidavits, declarations would be on uncrossed testimony that was self servicing at best, such as the declaration of Jeffrey D. Greenspan dated July 29, 2013, whereas in all the documentation provided by Greenspan, Mr.

Almazon does not appear except as inserted by Greenspan and the SEC trying to insert him to conversations recorded in print but did not show the presence of Mr. Almazon.  While Mr. Alamazon does not contest the Consent Order as far as allowing the court to determine the restitution based on facts, however,  he vehement protests the restitution based on uncrossed affidavits, assumptions and estimates.  A hearing should be held so that this Court gets all the facts to determine what is owed.  While it is true that the Court has broad discretion not only in determining whether to order disgorgement but also in calculating the disgorgement amount .  First Jersey, 101 F.3d at 1474-75 there must be a reasonable approximation of profits causally connected to the violation.  SEC v. First Jersey Inc, 890 F. Supp. 1185, 1211 (S.D.N.Y 1995).  Reasonable approximation should not be based on guesses such as disgorgement to "unknown"  See Exhibit 4 there contained investments from "Unknown" on 2/17/2011 in the amount of $5,000 and "unrelated" n on 4/15 for $5000.00.  The SEC is trying to shift the burden to the defendant to prove the requested disgorgement is not a reasonable approximation of unjust enrichment without first doing the proper ground work to show any casual connection.  Just because there is money in the account doesn't make it a causal connection.  Mr. Almazon was involved in many other services, investments and activities.  (Tr. At 54) Mr. Almazon is asking this court to hold a hearing in which all evidence and persons can be heard.  The SEC sat on this case doing nothing for several months until this Court imposed a schedule upon all parties.  Then the SEC wants to rush and make assumptions about casual connections without any basis to cover the fact that they did not try to make any reasonable determination.  Mr. Almazon is especially concerned that since the SEC stated that the total markups based on "estimated markup" totals $194,635.00 and attributes the balance of $139,455 as possible higher markup or misappropriation of funds without any proof or casual connection, just because the SEC says so..

Mr. Almazon was also involved in day trading and other activities and investments that are not

causally connected. The Court must liberally construe the evidence submitted by pro se

defendants. See Byng v. Wright, No. 09 Civ. 9924, 2012 WL 967430, at *6 (S.D.N.Y. Mar. 20,

2012)(citing Graham v. Lewinski, 848 F.2d 342,344 (2d Cir.1998).

## B.    The Defendant himself was a victim

12.     The SEC has excluded the Almazon Defendants as victims of Mattera's deceit. The SEC

seeks that Almazon conduct, acting through Spartan, was egregious and should be subject to the

highest level of civil penalties is unwarranted. Mr. Almazon believes that the share were real, he

invested his own monies and that of family and friends. The majority of investors came through

a Series 7 broker who also believed the certificates were real. Everyone involved believed that

was they were selling was real, especially Mr. Almazon. There was no malice or knowledge of

Mr. Mattera's deceit on the part of Mr. Almazon. Mr. Almazon was shown certificates and

documentation causing him to believe that he had access to the "real" thing. Mr. Almazon was

given letters from auditors, documentation showing that it was a foreign investment under which

he thought it was properly registered with the authorities who had jurisdiction. The SEC has a

copy of $20,000 shares of Fisker owned by Joseph Almazon yet it appears nowhere in the

calculations or on the victim list. Mr. Almazon has never been in trouble with the SEC or any

other regulatory body before. Mr. Almazon realizes that there are civil penalties, but feels that

"in light of the facts and circumstances" he should be treated as a first tier of potential penalties.

In summary judgment the scienter requirement necessitates a showing that defendants had

"intent to deceive, manipulate, or defraud." See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193

(1976). In the Second Circuit, scienter may be satisfied by showing defendants had actual

knowledge that the material statements they made were false, or that they were reckless in failing to discover their falsity. See Novak v. Kasaks, et al., 216 F. 3d 300, 308 (2d Cir. 2000). Recklessness is defined as, "at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Id. (citing Rolfv. Blyth, Eastman Dillon & Co., Inc., 570 F. 2d 38,47 (2d Cir. 1978». "[t]he Second Circuit has repeatedly held that where subjective issues regarding intent, motive or state of mind are implicated, summary judgment is usually inappropriate." See, e.g., Balderman v. United States Veterans Admin., 870 F.2d 57,60 (2d Cir.1989); Alvin S. Schwartz, M.S., P.A. Employer/Employee Profit Sharing Plan v. O'Grady, No. 86 Civ. 4243 (JMC), 1990 \VL 156274 (S.D.N.Y. Oct. 12, 1990)(denying summary judgment as to § 4(b) claim to the extent it relied upon subjective intent of defendant)(citing Balderman, 870 F.2d at 60); Ramseur v. Chase Manhattan Bank, 865 F.2d 460,465 (2d Cir.1989); Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir.I984». The protections afford defendants in summary judgment should extend to a hearing on disgorgement when it comes to determining civil penalties. This can only be truly ascertained by holding a hearing to determine whether civil penalties should be first, second or third tier.

**C.    The SEC is overreaching on its disgorgement and civil penalties by asking that Mr. Almazon be liable for the same disgorgement twice as well as twice the civil penalties.**

12.    The SEC states on page 5 paragraph B, second paragraph line 1 in Plaintiff Memorandum of Law that Spartan is an unincorporated entity and that Almazon controls Spartan and that Executive Source Holding LLC is solely controlled by Almazon. There is no legal definition of an unincorporated entity. It is either a dba of an entity or it is the dba of a sole proprietor . Thus,

under the SEC view Spartan and Almazon is one person. The SEC also acknowledges that Executive Source Holdings LLC is Almazon yet seeks separate disgorgement and penalties and seeks to hold Almazon responsible for both penalties and disgorgement so that the SEC can penalties Almazon twice for the same action. There should be one disgorgement and one civil penalty. The SEC should not be given two bites of the same apple as a way to stick it to Almazon. The SEC seeks to treat them as one entity until it's convenient to treat them as three entities. The SEC should not be allowed to have it both ways.

13.    The SEC should take the time to do more than just estimate and approximate the monies it felt that the Almazon Defendants owed. The SEC had at its disposable plausible methods of determining investments from investors as opposed to assuming and guessing. The SEC submitted a list of victims that was inaccurate and sloppy at best. Rather than contact the investor and asked if the investment was in Praetorian or a loan to Executive Source Holdings LLC as stated by Almazon, the SEC just discards Almazon claim without looking into it. The SEC states that "In the absence of any specific evidence to the contrary" Page 10 Paragraph 2 line 6 of the SEC Memorandum of Law in Support of Its Motion for Disgorgement, Civil Penalty and Extension of Asset Freeze shifting the burden to the Defendant of providing evidence rather than the burden on the Plaintiff to show evidence.

**D.    Mr. Almazon did not violate any Asset Freeze as suggested by the SEC**

14.    The SEC admits that neither Mr. Almazon knew of the Asset Free when Mr. Almazon made a withdrawn on the "day before" the Defendant or his counsel new of the Asset Freeze. The SEC notified Mr. Alder on the November 17, 2011 and the Order was granted on November 17, 2011. Mr. Almazon did not know of the freeze until later that day. Additionally, Spartan

Holding LLC is not a named defendant.  Spartan Holding LLC is not Spartan Capital Partners, the "unincorporated" entity as described by the SEC.

**E.    Mr. Almazon's Argument Concerning the Scottrade Account was not Frivolous**.

15.    Mr. Almazon maintained the position and has the paperwork showing that on February 8, 2011, Jonel Almazon, the Defendant's father, filed to liquid his account ending in 4310 with American Genial Life Companies, this contract with a surrender value of approximately $42,000. Jonel Almazon received a check in the amount of $42,000, which was deposited into Spartan Holding LLC Chase account ending in 1273.  It was the habit of Jonel Almazon to deposit proceeds from his employment and other sources that have no connection with this proceeding, into Spartan Holding LLC Chase account ending in 1273.  Spartan Holding LLC is not a named Defendant.  Jonel Almazon asked his son, Defendant Joseph Almazon, to trade his money for his (Jonel Almazon) benefit and caused money to be transferred to into the Scottrade Account ending in 3839 held by Joseph Almazon.  This money was not a loan, gift or for Defendant Joseph Almazon's own personal benefit.  The deposits into the Scottrade account were from the proceeds of the American General Life Companies policy owned by Jonel Almazon and transferred into the Scottrade Account ending in 3839 held by Joseph Almazon.  Mr. Almazon remains steadfast that $42,000 belongs to Jonel Almazon and whether or not it was declared in the bankruptcy is not dispositive on its face and is a matter for the bankruptcy court.  Mr. Jonel Almazon knew that the SEC froze the asset therefore it was no longer an asset to him.  This Court can address this issue if the Defendant is granted the hearing he respectfully asks this court to grant.

**III.    Conclusion**

Based on the foregoing, Mr. Almazon respectfully requests that this Court (1) set this matter for hearing or (2) in the alternative order disgorgement minus the $139,000 that the SEC cannot determine whether it is casually connected, minus $20,000 that the SEC discarded whereas Mr. Almazon was owed $20,000 from Mr. Mattera, minus $38,500 that the SEC discarded whereas Executive Source Holdings, LLC  was owed $38,500 from Mr. Mattera, and a adjust the prejudgment interest sought by the SEC.  There should be one disgorgement amount that is jointly and severally liable by Almazon and Executive Source Holdings plus a first tier penalty.  Additionally, Mr. Almazon renews his request to release the Scotttrade account from the asset freeze.

Respectfully submitted,

Joseph almazon

Joseph Almazon
27 Grape Lane
Hicksville, NY 11801



# Forensic Psychology Associates

## Dr. Jennifer N. Duffy
### Chief Clinical Psychologist
drjenniferduffy.com

**Suffolk Office:**
67- A Laurel Hill Road
Centerport, N.Y. 11721
(631) 239-6067

**Nassau Office:**
390 Merrick Road
Rockville Centre, N.Y. 11570
(516) 763-1885

**Approved Provider For:**
New York State Department of Motor Vehicles
United States Social Security Administration
New York State Workman's Compensation Board
New York County Defender Services

**Expert Witness For:**
Nassau County Bar Association
Assigned Counsel Defender Plan
New York State Defender Services

O.A.S.A.S. List of Approved Providers for D.W.I. Alcohol Assessments

---

**Re:** Almazon, Joseph
**Charge:** Reckless Endangerment 2nd Degree
Criminal Possession of a Weapon 4th Degree
Riot 1st Degree
**Date Of Assessment:** 05/12/11

**Date Of Birth:** 10/05/60
**Date Of Arrest:** 03/13/11

**REASON FOR REFERRAL:** The client was referred for a psychological evaluation exclusively in relation to his arrest for the above referenced offenses which occurred on 03/13/11. The purpose of this assessment was to determine whether Mr. Almazon meets the diagnostic criteria for V71.09 (No Condition or Diagnosis on Axis I), 305.00 (Alcohol Abuse), 303.90 (Alcohol Dependence), or any Impulse Control or Anger management Issue as defined by the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition (DSM-IV) published by the American Psychiatric Association. Various diagnoses indicate appropriate treatment protocols.

**PSYCHOLOGICAL ASSESMENT INSTRUMENTS USED:**
1) Diagnostic Interview
2) Michigan Alcohol Screening Test (MAST)
3) Comprehensive Mental Status Exam (CMSE)
4) Global Assessment of Functioning (GAF)
5) Life History Questionere
6) Interview with collateral source, The subject's father

**REVIEW OF DOCUMENTS:**
Web Crims Search

Photo Identification
Various Legal Documents
Copy of Criminal Complaint

## DIAGNOSIS: DSM IV

Axis I:  305.00  Alcohol Abuse
Axis II: V71.09 No Diagnosis on Axis II

**CURRENT SITUATION :** Mr. Almazon is a twenty-one-year-old white male who reports that he has been the owner/operator of a Day Trading Firm since last July.  He believes that he has a position of authority and responsibility as he trains, supervises and offers strategies to twelve day traders while managing all other day to day operations of his business.  He reported that he has been day trading since he was nineteen-years-old and had been a full-time stock broker for about a year and a half while attending college full-time.  He attended C.W. Post College and Nassau Community College where he studied finance and global economics.  He expressed that he has always been athletic participating on his high school football and basketball teams.  He stated that he was awarded a football scholarship to C.W. Post but turned it down so he could work full time. Mr. Almazon is single and has lived with his father as his parents have separated and are planning to divorce.  He expressed that turmoil within the family has been a source of tremendous emotional stress.  He reported that he has been put in the middle between his parents and must serve as an authority figure to his twelve-year-old brother who lives with his mother.  The subject expressed that he has been the "emotional glue" holding the family together.  He acknowledged that he had not been coping with this issue effectively and began binge drinking on the weekends as a means of escaping his problems.  Retrospectively he believes that he was self-medicating with alcohol as a coping strategy.  He acknowledged understanding that there are more positive and productive means of stress reduction other that the consumption of alcohol.  He reported that it had never previously been his behavioral operand to do so until his parent's marital problems began.  Mr. Almazon described himself as being loyal, trustworthy, responsible and hardworking.  Other than his familial issues, he feels that he has always been a well adjusted, level headed good decision maker.

His present legal circumstance is of great concern to him as he feels it might result in incarceration, adversely affect his future and his official record.  Mr. Almazon seemed candid and open in relating the dynamic of his relationship with his father, mother and brother, this particular circumstance, his personal drinking habits as well as his attitudes toward frustration, violence and anger.  From what he expressed, in the period of his life prior to his arrest, the subject consumed alcohol on a basis which would be considered excessive.  He acknowledged that he had a tendency to binge drink only on the weekends in response to familial stress.  In retrospect he stated that he understands he was self-medicating with alcohol as he could not emotionally deal with his parent's marital issues and the dissolution of the family unit.  Mr. Almazon stated that he has not personally had

past manifest problems with alcohol that interfered with his social/emotional/occupational functioning. He has never lost a job, done poorly at academics or had conflict with friends and family due to drinking. There is no reported familial history of Alcohol Abuse/Dependence. There is no past criminal history. There is no reported psychiatric history. Mr. Almazon reported that this incident has made him reevaluate what role if any he wants alcohol to play in his socialization process. Since the incident the subject stated that he has radically decreased his alcohol consumption. However, it is his intent to become sober for the sake of his health and his future.

It was his statement that he never had any disciplinary problems in his entire academic career or in the work place. He maintains that he has never initiated violent, inappropriate or abusive behavior towards his family, friends, co-workers, superiors, neighbors or any one else when he was in a sober state. Mr. Almazon stated that he has not had past manifest problems with anger or impulse control that interfered with his social/emotional/occupational functioning. He has never lost a job, done poorly at academics or had conflict with family/friends due to anger management issues on his part. It was his statement that he has always tried to avoid conflict because he would describe himself as being non-confrontational. Mr. Almazon characterized himself as being easy going yet assertive.

The subject expressed that while incarcerated for about thirty-six hours after this arrest he vowed to himself that his parent's problems would not cause him to be dysfunctional in any regard moving forward. He expressed understanding that his parent's issues are their own and they must deal with them as he is powerless to do so. He related that he has embraced a very positive mind set since his arrest and is highly focused on his business working from 7 a.m. until abut 10 p.m. six days a week. He stated that he is now completely dedicated to his own personal physical fitness and exercises at the gym on a daily basis while adhering to a strict diet. The subject stated that by highly structuring his life he has found emotional comfort in that he must be focused on what he is doing minute to minute. He also stated that he has a close group of friends that he had previously not confided in about his familial stress. He now does so and believes that it helps him cope.

MENTAL STATUS EXAM: Mr. Almazon was dressed informally. Demeanor was cooperative and he maintained appropriate eye contact. Speech was clear and direct. There was no psychomotor agitation or retardation. Mood was dejected with appropriate affect. There was no loosening of associations or other indications of a thought disorder. There were no delusions or hallucinations. There was no suicidal ideation. His intelligence seems above average. Memory was not impaired. He was oriented to time, place, and person. Insight and judgment were adequate. Levels of consciousness during the session were unimpaired. Attention and concentration were not impaired. Mr. Almazon appeared dismayed and concerned in discussing his arrest and how it might affect his future and official record.

**INTERVIEW WITH COLLATERAL SOURCE:** A separate interview was conducted with the subject's father, Joseph Almazon, who stated that his son was the product of a normal pregnancy and delivery, met all developmental milestones within normal limits and never exhibited any behavioral or disciplinary problems at home of at school while growing up. He believes his son to be a diligent and determined handworker who is very ambitious. He feels the subject is emotionally stable but has empathy for the tremendous stress that his divorce has caused his son. He stated that his son has always been athletic and sees a renewed dedication to exercising daily on his part. He does not believe that his son has issues with alcohol that have negatively impacted on his social/emotional/occupational functioning. However, he stated that he was shocked to hear of his son's arrest as the actions of which he is accused are highly out of character. It is his belief that a high level of intoxication could have altered his son's usually very good judgment on that date.

**FACTORS INDICATIVE OF EMOTIONAL STABILITY:**
Career as day trader / broker since age of nineteen
Starting own business managing others
No criminal history
No reported psychiatric history
Strong emotional support network constituted by friends
Utilization of daily vigorous exercise as manes of stress reliever.

**DIAGNOSIS:** 1)   Recent history of excessive drinking in response to specific situational stress interfering in social/emotional/occupational functioning suggests a personal Alcohol related problem.
       2) Michigan Alcoholism Screening Test (MAST) is indicative of Alcohol Abuse.
       3) Subject's report of alcohol consumption indicative of tolerance
       4)   No history of impulse control or anger management issues interfering with social/emotional/occupational functioning suggest no problem in this regard.
       5) Negative Alcohol Test
       6) DSM IV
       Axis I:  305.00   Alcohol Abuse
       Axis II:  V71.09  No Diagnosis on Axis II
       Axis III:  None
       Axis IV:  PSYCHOSOCIAL STRESSORS: Legal Problems,
              Social Stigma, Potential interference with future /
       job, On going familial issues / conflict
       Axis V:  CURRENT GAF: 86
            HIGHEST GAF PAST YEAR:  89

**PROGNOSIS AND RECOMMENDATIONS FOR TREATMENT:**
Prognosis is good. The subject is aware that drunk and disorderly behavior is

unlawful, socially inappropriate and could have caused harm to one's self and others. He expressed remorse about the incident and is thankful no one was injured. After an extensive interview, a separate interview with a collateral source, and review of test results stated above, it is my opinion that Mr. Almazon does suffer from Alcohol Abuse. Therefore Individual Therapy is warranted. The subject recognizes that he had a strong inclination towards excessive drinking when under unique situational stressors. This causes great difficulty coping effectively with his parents' marital issues and controlling himself in a way in which he knows is socially appropriate. In addition, he will be taught more appropriate ways of coping with conflict resolution, emotional stress as well as more adaptive ways of expressing his feelings. **Though the subject is not diagnosed with an Anger or Impulse control issue as defined by The D.S.M. IV,** treatment should include a course in **Anger Management,** as a preventative measure, to help him recognize how to better process feelings of frustration and deal with confrontation in a more positive manner. The subject agreed to comply with my treatment recommendations and follow The Anger Control Training Course as set forth by Williams and Barlow. The following areas will be addressed:

1) Consequences of Anger and Aggressive Behavior
2) The Functions of Anger
3) Beliefs Systems
4) Causes of Anger and Aggression
5) Cognitions: The importance of thoughts in Anger Control
6) Cognitions: Common Types of Thinking Errors
7) The Physiological Response
8) High Risk Situations
9) Lifestyle
10) Relapse Prevention Plan

We will be working with hands on practical tools such as a Personal Anger Function Chart, The General Functions of Anger Chart and a Cycle of Anger Work Sheet.

He agreed to comply with my treatment recommendations to explore how his parent's marital problems have contributed to his alcohol abuse and affected aspects of his world view. In therapy we will also address alcohol's effects on the central nervous system. We believe that this incident was born of situational circumstances which triggered aberrant behavior due to the subject's level of intoxication. The subject does not express current suicidal or homicidal ideation or intent. We do not believe him to be a danger to his family, himself or others. As his actions were born of an underlying psychiatric disorder, treatment is the most effective way to reduce recidivism. If Mr. Almazon were to be incarcerated, this would not only compound his stressors making it difficult for him to recover, but would interfere in his ability to obtain the necessary counseling. I respectfully request that the courts take these factors into consideration when determining the outcome of his criminal circumstance.

THE COURTS WILL BE KEPT INFORMED OF HIS PROGRESS IN TREATMENT AND
NOTIFIED OF ANY MISSED APPOINTMENTS OR FAILURE TO MEET
THERAPEUTIC GOALS.

The subject signed his name to the validity of answers given to all questions put to
him, either written or verbal, and understands that any untruthful or misleading
statement on his part renders the conclusions of this assessment null and void.

I certify to the best of my knowledge that the above information is true.

*Jennifer N. Duffy, Ph.D.*

Jennifer N. Duffy, Ph. D.
Clinical Psychologist

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff, | : | |
| v. | : | |
| | : | |
| JOHN A. MATTERA, et al.,<br>    Defendants, | :   : | 11 Civ. 8323 (PKC)<br>ECF CASE |
| | : | MOTION TO QUASH |
| - AND - | : | CERTIFICATE OF SERVICE |
| | : | |
| ANN A. MATTERA, et al.,<br>    Relief Defendants. | : | |
| | : | |

### DEFENDANT JOSEPH ALMAZON'S CERTIFICATE OF SERVICE

I Joseph Almazon, pro se Defendant, certify that on September 4, 2013, 1 caused to be served a copy of

the following listed below to Plaintiffs at the address listed below and by email;

**1. DEFENDANT JOSEPH ALMAZON ANSWER AND OBJECTION TO THE SEC
MOTION FOR DISGORGEMENT, CIVIL PENALTY AND EXTENSION OF ASSET
FREES AGAINST DEFENDANTS JOSEPH ALMAZON ANDD SPARTNA CAPITAL
PARTNERS AND RELIEF DENFEDNANT EXECUTIVE SOURCE HOLDING LLC.
AND REQUEST FOR HEARING OF THE AMOUNT OF DISGORGEMENT AND
CIVIL PENALTY**

Plaintiffs:      Securities and Exchange Commission
                 New York Regional Office
                 Preethi Krishnamurthy
                 Karen Willenken,
                 Michael Osnato
                 3 World Financial Center Room 400
                 New York, NY 10281
                 212.336.0116
                 willenkenk@sec.gov

Respectfully submitted,

Joseph Almazon
27 Grape Lane
Hicksville, NY 11801
1.516.457.8468