UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-22-14

                Plaintiff,

  -against-

JOHN A. MATTERA, ET. AL,

                Defendants.
-----------------------------------------------------------x

11 Civ. 8323 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

       Defendant Joseph Almazon, who is pro se, moves for reconsideration of this Court's Memorandum and Order, filed November 7, 2013, ordering a disgorgement of $390,376.95, plus prejudgment interest thereon, and continuing a freeze of assets under Almazon's control. For the reasons discussed, Almazon's motion is denied.

## BACKGROUND

       In a Memorandum and Order dated November 7, 2013 (the "Order"), this Court ordered Almazon to disgorge a total of $390,376.95, plus prejudgment interest thereon, based on his involvement in the fraudulent sale of Praetorian securities. (Memorandum and Order ("Order") 14, Docket # 168.) The Order also included a continuation of an asset freeze over accounts under Almazon's control. (Id.) A final judgment against Almazon followed soon thereafter. (Docket # 177.)

       Familiarity with the facts as described in the Order is assumed. In the Order, the Court based its calculation of the disgorgement amount on two quantities, the so-called "Retained Funds," which were computed as the difference between payments identified as being destined for Praetorian and the amount of money actually sent to Praetorian, and a computed

commission. (Order, 6, 9.) In computing the Retained Funds, the Court took a two step approach. First, it reviewed transactions identified by the SEC as payments to Almazon for purchases of Praetorian funds. (See id. at 7–8.) It next compared this amount to the total payments Almazon sent to Praetorian-related escrow accounts. (Id. at 8–9.) The Court found that the difference between the two quantities was a reasonable measure of Almazon's profits from the transactions. (Id. at 9.) The Court computed the commission as 5%, the percentage Almazon asserted he received, on average, from investments he sent to Praetorian. (Id. at 9–10.)

## LEGAL STANDARD

Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b), Fed. R. Civ. P. A motion to reconsider is "addressed to the sound discretion of the district court[.]" See Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (internal citation and quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id.

Motions for reconsideration "should be granted only when the defendant identifies an intervening change of law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal citation and quotation marks omitted).

## DISCUSSION

A pro se party's submissions must be read liberally and are construed "to raise the strongest arguments that they suggest." See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). As a preliminary matter, Almazon has not identified any intervening change of controlling law. Almazon requests that the Court reconsider three items from the Order and subsequent final judgment—a reduction in the disgorgement amount, a release of a Scottrade brokerage account from the asset freeze, and the terms of the final judgment.

First, in support of his request to reconsider the disgorgement amount, Almazon has submitted a "Statement of Source of Funds" to the Court. (Docket # 179.) The statement purports to account for $157,603 of the retained funds. Because this information was readily available to Almazon before the Order, though not submitted, it is not new evidence. In light of Almazon's pro se status, the Court examines it to the extent that it reveals a clear error in the Order, or provides information that would prevent manifest injustice should the Order not be reconsidered.

Almazon's current accounting details the income he received prior to his involvement with Praetorian, totaling $157,603. This total is unrelated to the Court's computation of the retained amount and is therefore not relevant. The Court based its analysis on transactions, not account balances. (See Order 6–9.) The accounting does not show that the Court misidentified any transactions, nor does it show that Almazon sent more money to Praetorian than identified. Therefore, the Court finds the computed disgorgement amount is not clearly erroneous, nor would enforcing the order cause manifest injustice.

Second, in his motion, Almazon renews his assertion that not all assets currently under his control belong to him and should be subject to the asset freeze. Specifically, Almazon identifies a Scottrade brokerage account as containing funds which belong to his father.

- 3 -

Almazon further asserts that the account was not used for any Praetorian-related transactions. Though the account may contain other funds, the accounting shows that some of the funds in the account belong to Almazon. As noted in the Order, without a clear separation of assets, a freeze of all assets under Almazon's control is not manifestly unjust. (See id. at 13.)

Finally, Almazon contends that the terms of the final judgment against him are at odds with a prior "Settlement Agreement" entered into with the SEC allowing for a repayment plan of 25% of his net income. Almazon has not submitted the agreement with his motion and the record does not contain a document labeled as a "Settlement Agreement." The Court assumes that Almazon refers to either the consent judgment entered against him, or the consent order for a preliminary injunction, both of which contain his signature. (Docket # 22, 71). Under section IV of the preliminary injunction order, "pending a final disposition of the action," Almazon was allowed use 75% of his income for his own purposes and was to place the remaining 25% in escrow. (Docket # 22.) As there has now been a final disposition of the action, the order is no longer relevant. The consent judgment makes no reference to a repayment plan. (See Docket # 71.) The Court is not aware of any payment plan now in effect or any other agreement between Almazon and the SEC.

## CONCLUSION

For the foregoing reasons, Almazon's motion to reconsider (Docket # 186) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 21, 2014